Daniel Bruce DUNN, b/n/f A. M. Dunn,
Appellant,

v.

SEARS ROEBUCK AND CO. et al.,
Appellees.

No. 14104.

Court of Civil Appeals of Texas.

Houston.

Sept. 19, 1963.

Rehearing Denied Nov. 7, 1963.

Hicks, Dollahon & Wohlt, F. Warren Hicks, Houston and Hill, Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston (On Motion for Rehearing), for appellant.

Henry Giessel, Don Weitinger, Houston, Talbert, Giessel, Cutherell & Barnett, Houston, of counsel, for appellees.

BELL, Chief Justice.

A. M. Dunn, the father of Daniel Bruce Dunn, brought suit individually and as next friend of his son against Sears Roebuck and Co. and V. L. Martin, to recover damages resulting from injuries sustained by the son when his bicycle and a panel truck belonging to Sears Roebuck and Company and driven by its employee, V. L. Martin, were in collision. The jury acquitted Martin of any act of negligence; found Dunn was not in a position of peril prior to the occurrence in question; found Dunn failed to keep his bicycle under proper control and that this was a proximate cause of the collision; and found damages to be "Zero". The court rendered judgment for appellees.

The only evidence as to how the injury occurred comes from Mr. Martin. The Dunn boy received a head injury and he apparently did not remember the occurrence. The accident occurred on the afternoon of January 29, 1960 about 2:45 o'clock. The day was clear. The point of contact between the truck and the bicycle was about 75 feet east of the east curb line of Oxford Street on White Oak Drive in Houston. White Oak Drive is a paved street running generally east and west and Oxford Street runs generally north and south. Oxford is a graveled street. At the time of the acci-

dent the Dunn boy would have been nine years old on February 11. He had been riding a bicycle about two years. He rode it to and from his school, which is located about six blocks from his home. According to his father he had become proficient in riding. The bicycle he was riding was a new one, it having been given him as a Christmas present. It was either a 24 inch or 26 inch bicycle, the evidence not being clear as to which.

Mr. Martin testified that he was driving east on White Oak Drive and just before reaching Oxford Street he was driving 25 miles an hour. When he was about fifty feet from Oxford he saw the young boy riding north on Oxford about fifteen feet south of White Oak. The boy's bicycle was wobbling and it looked as if the boy could not ride very well. He took his foot off the accelerator so that at the time of the collision he was going between 20 and 25 miles per hour. The boy turned east on White Oak and was riding in the curb lane. After getting on White Oak the boy was riding all right. From another witness we learn White Oak was 45 feet wide from curb to curb. There was two automobiles parked, one behind the other, at the south curb of White Oak. The first one was about 60 feet east of the east curb of Oxford. Mr. Martin said he watched the boy and angled his automobile to the left so he was driving in the lane next to the center of White Oak. As he overtook the boy on the bicycle at a point about the middle of the second parked car, he saw the boy opposite the right window of the cab of the truck. The boy threw up his hands and Mr. Martin pulled his truck to the left so that the tires on the left of his truck were about two feet to the left of the center stripe.

The investigating officer testified the point of impact was 18 feet from the south curb of White Oak. He determined this by the rubber mark made by the sideward move of the bicycle tire. Contact was first made with the right rear wheel of the truck and then with the right rear fender at bumper height and the right rear bumper.

There was no damage to the bicycle, but the handle bars were twisted and there seemed to be a slight roughing up of the rubber guard on the end of the left side of the handle bar. There were no defects in the pavement. There were no skid marks made by the truck. The width of the car parked at the curb would be about 6 feet. There would be 12 feet between the parked car and the point of impact if the car was parked against the curb. We find no testimony showing how close to the curb the car was. At one place Mr. Martin said there was at least 5 feet between his truck and the parked cars. The width of the truck would be 6 feet. If the truck was driven straight at the time of impact, its left side would be a foot and a half to the left of the center stripe. At one point Mr. Martin testified just before pulling his truck to the left, when he saw the boy throw up his hands, his left wheels were at the center stripe. If this is correct, there would be about 10½ feet between him and the parked cars. There was no indication at all, from an examination of the truck, that there was any contact forward of the rear wheel.

Mr. Martin testified he watched the boy continually after he first saw him because he though the boy could not ride very well. However, he testified he saw no danger of any collision until he saw the boy throw up his hands. He also testified there were no automobiles using the north side of White Oak for a distance of several blocks.

The boy, after the accident, was still astride the bicycle lying in the street with his head pointed toward and about two feet from the center. There was blood on the street but none on the truck or bicycle. The boy admittedly received a severe head injury and the medical expense was substantial.

Appellant, as grounds for reversal, asserts the following:

1. Three jurors concealed from appellant information concerning automobile collisions they or a member of their family had and deprived appellant of the opportunity to exercise peremptory challenges.

2. The answer of the jury that no damages resulted establishes that the verdict was based on bias and prejudice because the undisputed evidence shows substantial damages.

3. The jury's answers to Issues 21 and 23 (damage issues) are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

4. The jury's answer to Special Issue No. 1, that the Dunn boy was not in a position of peril, is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and would show the answer was not based on the evidence but was the result of bias and prejudice.

5. There is no evidence to support the jury's answer to Special Issue No. 6 finding in effect that V. L. Martin did not fail to turn his truck to the left as would a person of ordinary prudence.

6. That the answer to said issue is based on insufficient evidence and shows the answer was not based on the evidence but was the result of bias and prejudice.

7. The answer of the jury to Special Issue No. 8 finding Martin did not fail to make proper application of the brakes has no evidence to support it.

8. The answer to such issue is not supported by sufficient evidence and was thus the result of bias and prejudice, and not the evidence in the case.

9. The answer to Special Issue No. 10 finding Martin was not driving at an excessive rate of speed has no support in the evidence.

10. The answer to said issue is not supported by sufficient evidence and shows the answer was the result of bias and prejudice.

11. The answer to Special Issue No. 15, finding the Dunn boy failed to keep his bicycle under proper control, finds no support in the evidence.

12. The answer to said issue is not supported by sufficient evidence.

13. The answer to Special Issue No. 16, finding absence of proper control to be a proximate cause, finds no support in the evidence.

14. The answer to said issue is not supported by sufficient evidence.

Appellant's first contention is that the trial court erred in not granting a new trial because three jurors concealed information.

■ Complaint is first made that the juror, H. V. Smith, concealed from counsel the fact that he while riding a bicycle when he was about ten or fifteen years old had an accident. At the time of trial Mr. Smith was 41 years of age. He testified he did not disclose the incident because he thought there was no occasion to do so in reply to the questions asked. The accident was not similar to the one involved in this case. There were no personal injuries involved. He made a turn on his bicycle and an automobile turned to avoid hitting him and "grazed" another automobile. Neither car hit him. He always thought he was responsible. Mr. Smith revealed the incident to Mr. Wohlt, an attorney for appellant, as they were leaving the courthouse.

Mr. Broussard was another juror who allegedly concealed information. He did not disclose that a few months prior to trial his automobile hit a calf that ran in front of him near Weimar, Texas. The calf was injured. He spent some time looking for officers and the owner. He was driving about 40 miles per hour.

The other juror was Mrs. Dorothy Holland. She did not disclose that a few months before trial her husband had a minor accident involving a boy on a bicycle. She testified that when she was selected as a juror she had forgotten about it because it was so minor. Her husband had told her about it but he did not discuss with her who was at fault. She denied that she knew the boy was on a bicycle that was wobbling.

Her husband did not hit the boy. No one was hospitalized or given medical treatment.

We must now look to the questions asked on voir dire to determine if they were of such a nature as to call for disclosure.

Mr. Hicks, attorney for appellant, explained to the jury panel the nature of the case, that is, it involved an automobile accident between a panel truck of Sears Roebuck and Co. and a bicycle being ridden by the Dunn boy. After other explanations and questions not here material, Mr. Hicks asked this question of a panel member: "All right now, Mr. Polk, I believe you have no children but either you or your wife ever been involved in an automobile collision?" The court then interrupted and asked that the question be asked generally of the whole panel. Mr. Hicks then asked: "Either of you or members of your family involved in an automobile collision?" The court then said: "Take the first row." A juror, Mr. Clark, spoke up and asked: "Involving injuries or not?" Mr. Hicks replied: "Involving injuries." Then Mr. Hicks said: "Second row—any of you folks have injuries in automobile collisions? How about the third row?" Other questions were asked by Mr. Hicks, but they have no relevancy to our inquiry.

Mr. Giessel, attorney for appellees, then commenced his voir dire examination. Generally he stated that before stating what occurred not for the purpose of convincing the panel, but for the purpose of judging the jurors' background, he was seeking information about their background and business experience so he could judge who was best qualified in this type of litigation. He then stated appellees' theory of the case. Then Mr. Giessel noted that several jurors had indicated they had been involved in law suits. He then stated he was only interested in those where the jurors were either plaintiff or defendant, where it was claimed somebody got hurt and was seeking money because they got hurt. He then stated all parties were seeking impartial

jurors and a fair trial and he wanted to ask another question on which they should reflect. He then asked: "Is your mind—soul committed? Have you by reason of some experience in the past, regardless of what it might have been, been influenced to where your mind is no longer important—psychiatrists tell us no matter what happens in our life time influences you. * * * What I seek to determine and Mr. Hicks seeks to determine, whether somebody here had an accident or a law suit. * * * The fact someone had a child with serious injuries such as this one had, because of some experience in the past no longer possesses independent judgment? * * * If you know of something in the past to influence your judgment other than what you heard in the court room, please call it to our attention. * * * if you know of something in your background that would make it difficult—the fair thing to do to the parties and most of all to yourselves is to call it to our attention."

We are of the view that the effect of that portion of the voir dire above set out was to ask if any member of the panel or a member of his or her family had ever had an automobile collision in which personal injury was involved. The narrative by Mr. Giessel and the questions asked by him were only to the effect, in addition to inquiry of accidents or law suits involving injury, that the jurors should disclose anything in their background that would affect their judgment so they could not be a fair juror.

As to Mrs. Holland, there was no concealment because the evidence supports the implied finding of the court that she had forgotten the incident where her husband's automobile had hit a bicycle. Too, we think the questions asked called for disclosure of automobile collisions involving personal injuries. From the testimony the court could have concluded there was no injury involved.

Mr. Smith had not been in any automobile collision. Twenty-five years before an automobile had swerved to miss his bicycle and had "grazed" another automobile. Too, there were no injuries involved. Mr. Smith had apparently not forgotten the incident but, as he stated, from the questions asked he saw no occasion to disclose the incident. With his conclusion we agree.

Mr. Broussard had a collision with a calf. It appears the calf was injured. No injury to persons is reflected nor was any damage to his automobile shown. If, which we doubt, disclosure was called for by the questions asked, the incident is so minor and so unlike the case before us we can see no possible harm resulting to appellant.

In order for erroneous or false answers given on voir dire to entitle a party to a new trial there must have been concealment by the juror. Childers v. Texas Employers Insurance Association, 154 Tex. 88, 273 S.W.2d 587; Thompson v. Quarles, 279 S.W.2d 321, C.C.A., ref., n. r. e. If the juror has forgotten the incident, there is no concealment. Childers v. Texas Employers Insurance Association, supra. Also, before concealment can be held to be present, the questions asked must be of such a nature as to call for disclosure. Thompson v. Quarles, supra; Tudor v. Tudor, 311 S.W.2d 733, C.C.A., ref. 158 Tex. 559, 314 S.W.2d 793.

Appellant, as specified above, complains that the answers of the jury to certain issues are without evidentiary support. With the exception of the damage issues, which we will specifically notice later on, there is evidence of probative force to support all answers made by the jury.

We have given the substance of all the evidence bearing on how the accident happened. In appraising appellant's points asserting, as above specified, that the jury's answers to certain issues are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong, we must consider all of the evidence, both that which supports the answers and that

**736**

which militates against them. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Even though we, had we been jurors, would have held differently from the jury, we may not substitute our judgment for that of the jury. Before we can set aside jury findings as being insufficiently supported by the evidence the answers must be so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust or clearly wrong. Continental Bus System, Inc. v. Biggers, 322 S.W.2d 1, C.C.A., ref., n. r. e. Appraising the evidence in the light of these applicable rules, we are unable to say the answers of the jury are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust or clearly wrong.

The jury did answer "Zero" to each damage issue. The undisputed evidence showed substantial damage. However, this does not present reversible error because the jury found on sufficient evidence that the Dunn boy was guilty of an act of contributory negligence which was a proximate cause of the collision and acquitted Martin of any act of negligence. Under such circumstances, even had the jury found substantial damages, the trial court would have been required to enter the judgment it did enter. While such an answer of no damages, when the undisputed evidence shows damages, may be cause for suspicion that the answer was induced by prejudice or improper influence, improper influence or prejudice may not be presumed when the jury's answers acquitting the defendant of negligence and convicting the plaintiff of contributory negligence finds sufficient support in the evidence. Southern Pine Lumber Co. v. Andrade, 124 S.W.2d 334, Tex.Com.App.

The judgment of the Trial Court is affirmed.

COLEMAN, Justice (dissenting).

I respectfully dissent. It is my opinion that the answer made by the jury to Special Issue No. 6 is against the great weight and preponderance of the evidence. I am also of the opinion that the answer of the jury to Special Issue No. 15 is not supported by any evidence. I would reverse the judgment of the Trial Court and remand the case for a new trial.