**H. D. WACHTENDORF, Appellant,**

**v.**

**HARKINS & COMPANY, Appellee.**

**No. 15324.**

Court of Civil Appeals of Texas, San Antonio.

Dec. 31, 1974.

Rehearing Denied Jan. 29, 1975.

**600**

Edwards & De Anda, Charles E. Sweetman, Corpus Christi, for appellant.

Dyer, Redford, Burnett, Wray & Woolsey, H. T. Hermansen, Jr., Corpus Christi, for appellee.

CADENA, Justice.

Plaintiff, H. D. Wachtendorf, appeals from a judgment, based on a jury verdict, denying him recovery for personal injuries which he alleged were approximately caused by the negligence of the employees of defendant, Harkins and Company. Plaintiff here seeks reversal of that judgment because of jury misconduct.

At the outset, we dispose of plaintiff's fourth point of error which relates to the failure of one of the jurors to disclose, on voir dire examination of the panel, the extent of his acquaintance and relationship with one of the lawyers representing defendant. This complaint was not incorporated in plaintiff's amended motion for new trial and cannot be considered. Rules 320, 324, 327, Texas Rules Civil Procedure (1967).

On September 14, 1969, plaintiff delivered a piece of oil well drilling equipment known as a "shock sub," weighing about 2,000 pounds, to an oil rig which was being operated by defendant. The shock sub was delivered in a pick-up truck owned by plaintiff. Plaintiff was injured when the shock sub, in the process of being unloaded, struck him and knocked him out of the bed of the truck.

The manner in which plaintiff was injured, and the cause of the accident, was sharply disputed. Plaintiff testified that a line from defendant's drilling rig had been attached to the shock sub to hold it in place during the unloading process, and that one of defendant's employees was in the bed of the truck helping to unload the piece of equipment. According to plaintiff, as he was standing in the bed of the truck with his back to the shock sub and unhooking a chain, he was struck by the equipment and knocked out of the truck. According to plaintiff, the only way the shock sub would have been caused to move would have been by an improper movement of the line attached to the equipment from defendant's rig, or by being bumped or struck by defendant's employee who was in the bed of the truck assisting plaintiff.

All of defendant's witnesses testified that no employee of defendant was in the bed of the truck with plaintiff during the unloading process, although they differed on the question of the exact whereabouts of Jones, the employee in question. Defendant's witnesses testified that plaintiff had let down the tailgate of the truck and that, during the unloading process, the shock sub slipped backward out of the

truck and onto the ground, striking plaintiff as it slid out of the truck. Plaintiff testified that the truck had no tailgate, since he had removed the tailgate at the time he purchased the truck and had replaced it with a piece of timber across the back end of the truck. He said the shock sub was resting firmly against such timber and that the timber would prevent the shock sub from sliding backward out of the truck.

One end of the shock sub rested on the "headache bar" immediately above and behind the cab, while the other end rested on the floor of the bed toward the rear. Plaintiff testified that the equipment was fastened and held in the truck by chains at two places—one at the headache bar and the other at the middle of the bed. One of defendant's employees testified that the shock sub was chained only at the headache bar, while another defense witness said that it was chained at the middle of the truck bed, but that he did not remember whether it was chained elsewhere.

Special issue no. 1 inquired whether the jury found that, prior to the time "Plaintiff was thrown from the truck," a line from the drilling rig was tied to the shock sub. The jury's "no" answer to this issue made it unnecessary, in view of the form of submission, for the jury to answer issues 2, 3, 4, 5 and 6. The jury also returned a negative answer to special issue no. 7, which inquired whether an employee of defendant "fell or struck against" the piece of equipment, causing it "to move and strike the Plaintiff." This answer made it unnecessary for the jury to answer issues 8 and 9. In answer to issues 10, 11 and 12, the jury found that plaintiff had negligently loosened the chains from the shock sub when it was not otherwise "secured from movement," and that such negligence was a proximate cause of plaintiff's injury. In answer to issues 13 and 14, the jury found that plaintiff was negligent in untying the shock sub while he was standing to the left of it and that such negligence was a proximate cause of plaintiff's injury.

By his first point of error, plaintiff contends that the jury was guilty of prejudicial misconduct in that its members gave "original testimony and erroneous statements of the law based upon personal experience and not upon the evidence and law presented in the trial."

When the jury retired to deliberate, the first vote was taken on issue no. 1, which inquired whether a line from the drilling rig was tied to the shock sub. On this vote the jury was either evenly divided or voted 7–5 in favor of an affirmative answer to the issue, and the discussion with reference to this issue continued. Plaintiff asserts that the jury foreman, Faraon Saenz, during the course of the discussion, stated that he had worked in oil fields for several years, and that he knew that each person had to look out for himself and that others working have no responsibility to look out for others. He also said that persons making deliveries of equipment to a drilling site had to do their own unloading without assistance from the employees of the deliveree.

The testimony of the jurors who testified does not compel the conclusion that, in making these statements, Saenz made it known that his conclusions were based on his experience. In any event, there was evidence to the effect that, when one of the jurors asked how one person could be expected to unload, unaided, a piece of equipment weighing one ton, Saenz replied that he should have waited for someone to help him. We do not believe that the record is such as to justify us in overturning the trial court's conclusion that, in fact, there was no misconduct.

There is also evidence to the effect that one of the jurors said that he had once been employed as a delivery boy, and that it was his duty to deliver the merchandise exactly where his employer told him. This cannot be considered misconduct. It can hardly be concluded that, but for this alleged communication of his experience by one juror, the other jurors would not have been aware that it is the duty of a delivery

man to follow his employer's instructions. We can safely presume that such a statement is within the common knowledge of every person, and there is nothing in the record to indicate that this juror cited his experiences in order to establish himself as an "expert," or that he gave his jurors any information which a juror would not ordinarily have. See Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483 (1943).

Plaintiff also charged misconduct on the part of Saenz because that juror stated that, based on his experience in the oil fields, he did not believe that, as testified by plaintiff, there was a board at the back of the truck on which the shock sub rested. His conclusion was based on the fact that the board was not "oily" and that the screws by which the board was attached to the truck were "shiny."

Several pictures of plaintiff's truck, showing the board at the rear of the truck bed, were introduced in evidence and were examined by the jury. These pictures are sufficient to establish that the board, in fact, is not "oily," and that the metal by which the board is attached to the truck are, in fact, "shiny." Although plaintiff was injured in September, 1969, the picture shows that it was taken later, since the truck bears 1970 license plates.

Again, we believe that the statements by Saenz related to nothing more than information which forms a part of a juror's reservoir of common knowledge, rather than information accepted at face value because it is based on the experience of an expert. It is certainly common knowledge that a board on a truck which is used in delivering oil field equipment to drilling sites would become oily, and the inferences, if any, drawn by Saenz and the other jurors were based on the picture that was admitted in evidence. That is, we do not have before us a situation where there was a discussion of information which rests upon the peculiar experience of one juror. 3 McDonald, Texas Civil Practice §§ 14.06.1, 14.10 (1970).

Finally, it appears that, during the discussion of issue no. 1, Saenz conducted an experiment with a hat rack, a piece of string and a soft drink bottle. This demonstration was designed to show if, as plaintiff contended, a line from the drilling rig had been attached to the shock sub, the accident would not have occurred in the manner described on the witness stand by plaintiff. Saenz had been arguing that if a line had in fact been attached to the equipment on the truck and had been loosened, the shock sub would have 'jumped' out of the truck because the heavy part of the shock sub was at the bottom.

Again, it is not clear from the testimony that Saenz, in arguing his position, was doing so as a man peculiarly qualified by his experience. In fact, the record supports the conclusion that Saenz was relying on the reenactment, in which other jurors assisted him, of a demonstration presented to the jury during the course of the trial. One juror testified that he had seen the same experiment conducted in the presence of the jury by defense counsel in the court room, while another juror testified that, except for the props used by Saenz, the demonstration in the jury room was the same as that which the jurors witnessed in court.

The demonstration in the jury room, being merely a duplication of what had occurred during the trial in the court room, was not such as to amount to the reception of new evidence by the jury. The case is not like Crawford v. Detering Co., 150 Tex. 140, 237 S.W.2d 615 (1951), where a juror had related the effect of a test conducted by his employer. Here, the experiment was well within the scope and purview of the evidence. 3 McDonald, op. cit. § 14.06.2 (1970).

Plaintiff's first point of error is overruled.

By his second point of error, plaintiff complains that, after the jury had finally agreed on a negative answer to the

first special issue, they did not vote on the remainder of the issues. According to plaintiff's theory, the foreman, Saenz, told the jurors that their answer to the first issue determined the answers which should be made to the other issues, and he then proceeded to answer the other issues to conform to the answer to the first. However, there is evidence to support the conclusion that, in fact, the jurors voted on each issue and that, therefore, the misconduct of which plaintiff complains did not occur.

■ Finally, plaintiff's third point embodies the complaint that the juror Saenz failed to disclose the fact that he was a party defendant to a suit for personal injuries which was pending at the time this jury was selected and the case tried.

During the voir dire examination of the prospective jurors, counsel for plaintiff asked the panel, "Is there anybody here who has ever been a plaintiff or a defendant in a law suit before?" Plaintiff's counsel then explained that he was not interested in divorce cases, adoption cases "or anything that would involve your family," and he then repeated the question. Two of the panel raised their hands and were questioned concerning the cases in which they had been involved. Faraon Saenz remained silent.

The record establishes that on October 16, 1968, suit was filed in the court which heard this case by Roberto Munguia and others to recover from Saenz for personal injuries received by such plaintiffs as a result of a vehicular collision involving their automobile and one being driven by Saenz. The sum which plaintiffs in that case sought to recover was in excess of $20,000.00. The deposition of Saenz had not been taken, and the case had been set for trial only once, on July 12, 1971. The court remarked that the case had probably been set on the court's own motion in an effort to get rid of the case which had been pending for almost three years.

Saenz testified that the fact that the case was pending against him had slipped his mind and he did not think of it at the time the general question was asked of the panel. At the hearing on the motion for new trial he added that he did not remember the question being asked, but that he had had no trouble hearing the questions.

The test in this case is not whether Saenz failed to disclose the fact that he was the defendant in a personal injury case which was still pending at the time he was selected as a juror in the case now before us. The question is not whether he had forgotten that the case was pending, but whether he had concealed that fact and such concealment resulted in probable injury to plaintiff. Rules 327, 434 and 593, Tex.R.Civ.P. (1967). The failure to disclose, because of a failure to remember a case filed five years previously and in which apparently there had been no action, does not establish concealment. Cf. Childers v. Texas Employers' Ins. Ass'n, 154 Tex. 88, 273 S.W.2d 587 (1954); Dunn v. Sears Roebuck & Co., 371 S.W.2d 731 (Tex.Civ.App.—Houston 1963, writ ref'd n. r. e.); Note, 7 Baylor L.Rev. 318.

Saenz also testified that he was defendant in a suit brought against him by a bank to recover on some promissory notes executed by Saenz. This case was settled, but as a result, Saenz lost all of the equipment which he used in his business and his life's savings. However, this ground for a new trial was not raised in plaintiff's amended motion for new trial and cannot be considered.

The judgment of the trial court is affirmed.