**Conditionally Grant and Opinion Filed November 21, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00940-CV

### IN RE ZIMMER, INC., Relator

**Original Proceeding from the 366th Judicial District Court
Collin County, Texas
Trial Court Cause No. 366-03111-2011**

## OPINION

Before Justices FitzGerald, Francis, and Brown
Opinion by Justice Francis

Zimmer, Inc. filed this petition for writ of mandamus after the trial court granted a motion for new trial in this product liability suit. Because we conclude the trial court abused its discretion in ordering a new trial, we conditionally grant mandamus relief.

This case arises from a product liability suit brought by real party in interest Don Gustafson against Zimmer, Inc. for injuries allegedly sustained as a result of the failure of the Zimmer Periarticular Distal Medial Tibial Locking Plate, a metal plate used by orthopedic surgeons to provide temporary internal stabilization for severe fractures of the lower leg. Gustafson alleges the product was defectively designed. The Zimmer plate was implanted in Gustafson's leg following a serious motorcycle accident. The first Zimmer plate failed roughly a year after it was implanted, and another Zimmer plate was then implanted. This second plate also failed after a similar period of time. Gustafson contends he is permanently disabled as a result of the failure of the two implants.

The case was tried to a jury. The jury selection process included a written questionnaire asking, "If you or a family member ever had a serious bodily injury, describe what happened." Zimmer's attorney also questioned the venire about any experience they or their family members may have had with serious injuries. He asked, "Has anyone here had a bad injury which caused fractures or some real significant injury, or have you had a very close family member that has had a very, very significant injury?" Several jurors responded affirmatively to this question, and Zimmer's attorney included follow-up questions regarding their experiences. Although there were a number of challenges for cause, neither party challenged any juror for cause based on his or her disclosure of any experiences with injuries. Venireman Young was among the jurors seated. Young answered "None" to the inquiry on the juror questionnaire regarding serious bodily injury and did not respond to Zimmer's question during voir dire regarding injuries, although he did respond to other questions during voir dire about the burden of proof and his ability to be fair to a veteran of the armed services.

The jury returned a 10-2 verdict in Zimmer's favor and the trial court rendered a take-nothing judgment based on the jury's verdict as requested by Zimmer. Young voted with the majority. Gustafson then moved for new trial, asserting: (1) the jury had engaged in misconduct and (2) the jury's finding the Zimmer plate was not defective was against the great weight and preponderance of the evidence. In support of his motion, Gustafson provided affidavits from the two dissenting jurors alleging several incidents of purported juror misconduct.[1] Zimmer responded to the motion for new trial but did not attach any counter-affidavits to its response.

---

[1] Much of the content of the affidavits concerns statements made during jury deliberations. Such statements cannot form the basis of a motion for new trial. Both the Texas Rules of Civil Procedure and Texas Rules of Evidence prohibit a juror from testifying as to any matter or statement occurring during the course of the jury's deliberations for the purpose of impeaching the verdict. TEX. R. CIV. P. 327(b); TEX. R. EVID. 606(b); *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 370 (Tex. 2000) ("Rule 327(b) operates to prohibit jurors from testifying about matters and statements occurring during deliberations."). The trial court properly refused to consider the statements made during the course of deliberations.

The trial court conducted a hearing on the motion for new trial. At the hearing, Gustafson's counsel argued his affidavits alleging juror misconduct warranted a new trial, but he did not offer any live testimony or other evidence and did not attempt to introduce the juror affidavits as evidence. Zimmer also did not offer evidence and did not argue Gustafson's motion should fail because Gustafson did not offer evidence at the hearing.

The trial court granted Gustafson's motion for new trial. The trial court found "that the juror misconduct detailed in the two affidavits probably caused injury to Plaintiff and rendition of an improper verdict." The trial court further found "the jury's verdict was contrary to the great weight of the evidence." The trial court elaborated:

> [T]here was uncontroverted evidence that the design of the Zimmer tibia plate at issue in this litigation had failed the design validation criteria in Defendant Zimmer's 510k submission to the FDA due to the weakest point of the Zimmer tibia plate being located in the shaft of the plate. In addition, there was uncontroverted evidence that the results of a bending stiffness test conducted by Defendant Zimmer demonstrated inadequate stiffness of the Zimmer tibia plate.

A trial court's order granting a new trial may be reviewed by an appellate court in a mandamus proceeding. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding). A writ of mandamus will issue to correct a clear abuse of discretion committed by a trial court in granting a new trial. *In re Whataburger Rests. LP*, 429 S.W.3d 597, 598 (Tex. 2014) (per curiam) (citing *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 756–57 (Tex. 2013) (orig. proceeding)). The supreme court has stated:

> A trial court does not abuse its discretion so long as its stated reason for granting a new trial (1) is a reason for which a new trial is *legally appropriate* (such as a well-defined legal standard or a defect that probably resulted in an improper verdict); and (2) is *specific enough* to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand.

*Toyota*, 407 S.W.3d at 756–57 (emphasis in original) (quoting *United Scaffolding*, 377 S.W.3d at 689–90). A new trial order "cannot stand," however, when the "trial court's articulated reasons are not supported by the underlying record." *Toyota*, 407 S.W.3d at 757.

The order in this case cites juror misconduct and factual sufficiency of the evidence as its bases for granting new trial. Both juror misconduct and factual sufficiency of the evidence to support the jury's verdict, if established, are legally proper reasons for granting a new trial. Thus, the order complies with the first requirement. *See Toyota*, 407 S.W.3d at 759.

The trial court's order also satisfies the second requirement, specificity. It recites the specific facts and circumstances of the case that led the trial judge to conclude the jury had engaged in misconduct. The order is specific enough both to permit Zimmer to attack it and to enable our review. *See In re United Servs. Auto. Ass'n*, No. 01-13-00508-CV, 2014 WL 4109756, at *12 (Tex. App.—Houston [1st Dist.] Aug. 21, 2014, orig. proceeding). The order explains, with reference to the evidence adduced at trial, the basis on which the trial judge found the jury's verdict to be against the great weight and preponderance of the evidence. *See United Scaffolding*, 377 S.W.3d at 688. It is clear the trial court did not simply "parrot a pro forma template" in drafting its order. *See Toyota*, 407 S.W.3d at 759.

However, "[s]imply articulating understandable, reasonably specific, and legally appropriate reasons is not enough; the reasons must be valid and correct." *Id.* Thus, we must undertake a "cumbersome review" of the trial court's forty-one volume record to determine whether it supports the trial court's conclusion the jury engaged in misconduct and the jury's verdict was against the great weight and preponderance of the evidence. *See id.*

To warrant a new trial based on jury misconduct, the movant must establish (1) the misconduct occurred, (2) it was material, and (3) it probably caused injury. TEX. R. CIV. P. 327(a); *In re Health Care Unlimited, Inc.*, 429 S.W.3d 600, 602 (Tex. 2014) (citing *Golden*

–4–

*Eagle Archery*, 24 S.W.3d at 372). The complaining party has the burden to prove all three elements before a new trial can be granted. *Healthcare Unlimited*, 429 S.W.3d at 602. Gustafson failed to meet this burden.

In attempting to meet his burden, Gustafson obtained the affidavits of the two dissenting jurors. The first affidavit, from the foreman of the jury, stated some jurors discussed the award of money to Gustafson "during the trial and prior to the close of evidence." The foreman's affidavit noted "one juror stated that the juror's mother-in-law lost both of her legs and that she was working as a reason why Mr. Gustafson should not be awarded the money damages he was seeking." The juror who made this statement about his mother-in-law was subsequently identified in the foreman's amended affidavit as juror Young.

The affidavits also attempted to establish the jury disregarded the trial court's admonitory instructions. Specifically, the foreman's affidavit further stated that during the trial and before the close of evidence "one of the jurors discuss[ed] how awarding Mr. Gustafson the money for his damages would change Mr. Gustafson's social class and would be more than he could have earned at work." The juror who allegedly voiced this concern was never identified. The second dissenting juror's affidavit stated the concern about elevating Gustafson in social class was raised by "multiple jurors," although the second dissenting juror did not note whether these sorts of comments occurred during deliberations or outside of deliberations. In addition, the second dissenting juror's affidavit stated:

> [M]ultiple jurors were deliberating the facts and sharing their opinions prior to the end of trial while the case was still ongoing and before the commencement of jury deliberations. Among other things, these jurors discussed whether the Zimmer plate was defective and whether Plaintiff or Defendant Zimmer was correct. At least some of these discussions occurred when not all jurors were present.

Neither of the dissenting jurors testified live at the hearing on the motion for new trial. The trial court heard only argument and did not receive evidence. Thus, these two affidavits

formed the sole basis upon which the trial court concluded jury misconduct occurred. Gustafson argues the trial court appropriately determined the motion for new trial based on these two affidavits and argument alone.

Relying on case law governing motions for new trial following entry of a default judgment, Gustafson first argues "the affidavits attached to a motion for new trial can be considered evidence without being offered at a hearing." *See, e.g.*, *Dir. State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994) (affidavits attached to the motion for new trial "do not have to be offered into evidence in order to be considered by the trial court for the meritorious defense element or any other element of the *Craddock* test"). Neither the case law nor any procedural rule mandates an evidentiary hearing when a party seeks a new trial following a default judgment.[2] The decisions permitting determination of a motion for new trial following default judgment based on affidavits reflect a preference for an adjudication of cases on their merits rather than dismissal based on procedural default. *Sutherland v. Spencer*, 376 S.W.3d 752, 756 (Tex. 2012). They are not pertinent to our construction of rule 327.

Rule 327, unlike the case law developed concerning motions for new trial following a default judgment, plainly states the trial court "shall hear evidence [of misconduct of the jury or the officer in charge of them] from the jury or others in open court . . . ." TEX. R. CIV. P. 327(a). Gustafson argues this evidentiary requirement applies only when one of the parties seeks to offer live testimony. He contends it exists solely so jurors or other persons who are not willing to sign affidavits may be subpoenaed and compelled to testify. We disagree this is the sole purpose of the evidentiary hearing requirement. Such an interpretation of rule 327 is at odds with both the

---

[2] In fact, "not every hearing called for under every rule of civil procedure necessarily requires an oral hearing. Unless required by the express language or the context of the particular rule, the term 'hearing' does not necessarily contemplate either a personal appearance before the court or an oral presentation to the court." *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998). The supreme court discourages oral presentation of testimony and evidence where motions can fairly be submitted in writing. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005). However, a hearing on a motion for new trial based on juror misconduct is not such a case.

recent development of new trial case law and the long history of rule 327 and its predecessors in cases denying motions for new trial.[3]

The recent evolution of Texas jurisprudence regarding motions for new trial has been driven largely by a desire to protect the right to a jury trial free from the possibility that the jury's verdict will be set aside simply because the trial judge sees the evidence differently. *See generally In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 210–15 (Tex. 2009) (orig. proceeding). Rule 327 is an integral part of the scheme to preserve jury verdicts from being set aside arbitrarily. As the supreme court has noted, rule 327 seeks to protect the integrity of jury verdicts "by giving due consideration to the right to a jury trial in an effort to best protect the trial process." *In re Health Care Unlimited, Inc.,* 429 S.W.3d at 603–04 (admonishing trial court for presuming harm based on the appearance of impropriety arising from communications among juror and person associated with party).

There is basis for a "significant concern" that "a disgruntled juror whose view did not prevail in the jury room" might seek "vindication by overturning the verdict." *Golden Eagle Archery*, 24 S.W.3d at 36. Indeed, Zimmer contends that is the situation in this case. Thus, to be entitled to a hearing on a motion for new trial alleging juror misconduct, the party raising such a claim must first "afford assurance to the court that the proponent of a motion [will] probably be able to support by proof the allegations of his motion" by providing the trial court with affidavits that tend to establish misconduct. *Estep v. Bratton*, 24 S.W.2d 465, 468 (Tex. Civ. App.—Eastland 1929, no writ); *accord Elston v. Sherman Coca-Cola & Dr. Pepper Co.*, 596 S.W.2d 215, 217 (Tex. Civ. App.—Texarkana 1980, no writ) ("The party asserting jury misconduct must show good faith by demonstrating that such allegation is based upon knowledge rather than

---

[3] Texas law until recently has prohibited review of most orders granting new trial. *See In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 208 (Tex. 2009) (orig. proceeding). ("[O]ur decisions preclude, for the most part, appellate review of orders granting new trials."). Thus, Texas courts have not had the opportunity to review cases in which trial courts have granted new trial based on juror misconduct.

hope."). The affidavit requirement is a "remedy against 'fishing expeditions.'" *Moran Utils. Co. v. McHaney*, 325 S.W.2d 712, 722 (Tex. Civ. App.—Beaumont 1959, writ ref'd n.r.e.) (quoting *Freedman Packing Co. v. Harris,* 160 S.W.2d 130, 134 (Tex. Civ. App.—Galveston 1942, writ ref'd w.o.m.)).

A proceeding under rule 327 is not complete, however, upon the filing of the affidavits. Once a party has come forward with affidavits or an "equivalent explanation of the attendant circumstances" tending to support the claim of jury misconduct, the trial court "must make an initial determination as to whether material misconduct occurred from the motion and its attachments." *Elston*, 596 S.W.2d at 217. If the party raising the issue of jury misconduct meets its initial burden to produce affidavits that satisfy the trial court that the party alleging misconduct will probably be able to support its allegations with "competent proof," rule 327 "imposes a mandatory duty upon the trial court to receive evidence of jury misconduct if it is properly presented." *Id.* The trial court has no discretion to refuse to conduct an evidentiary hearing when a party comes forward with affidavits supporting a cognizable claim of material jury misconduct. *Hatton v. Highlands Ins. Co.,* 631 S.W.2d 787, 788 (Tex. App.—Tyler 1982, no writ); *Elston*, 596 S.W.2d at 217.

Gustafson argues, however, that because here neither party sought an evidentiary hearing, the trial court was entitled to decide the question of jury misconduct on the basis of affidavits and argument alone. We disagree. The primary question to be determined when considering a rule 327 motion is whether misconduct occurred, which is a question of fact. *Tex. Emp. Ins. Ass'n v. Moore*, 549 S.W.2d 37, 39 (Tex. Civ. App.—El Paso 1977, no writ). "[I]t is the province and duty of the trial judge [considering a motion for new trial based on juror misconduct] to pass upon the credibility of witnesses and the weight to be given the testimony and to find the facts . . . ." *Estep*, 24 S.W.2d at 469. A trial judge ruling on a motion for new

trial based on affidavits of juror misconduct alone cannot perform the critical function of assessing the credibility of the affiants, who are making serious charges about the manner in which their fellow jurors have discharged their duties.

For that reason, both this Court and numerous other courts of appeals have concluded in upholding trial court orders denying new trial when a party moving for new trial has rested on affidavits alone, that affidavits attached to a motion for new trial alleging juror misconduct are "neither evidence nor admissible as such on the hearing for a new trial on the ground of jury misconduct." *Downing v. Uniroyal, Inc.*, 451 S.W.2d 279, 284 (Tex. Civ. App.—Dallas 1970, no writ); *accord Allison v. Gulf Liquid Fertilizer Co.*, 381 S.W.2d 684, 686 (Tex. Civ. App.— Fort Worth 1964, no writ). "Affidavits alleging jury misconduct do not constitute evidence of the facts therein stated." *Innes v. Greiner*, 449 S.W.2d 83, 85 (Tex. Civ. App.—Amarillo 1969, no writ). As a result, a trial court may properly deny a motion for new trial when a party alleging jury misconduct relies only on affidavits and fails to request a hearing on his motion and offer live testimony proving misconduct. *See, e.g.*, *McNutt v. Qualls*, 433 S.W.2d 521, 524 (Tex. Civ. App.—Dallas 1968, no writ) (trial court did not err in refusing to grant new trial where complaining party offered only affidavits); *see also Innes,* 449 S.W.2d at 85 (plaintiff waived any objection he may have had to jury misconduct by failing to request a hearing, relying instead on affidavits); *Hernandez v. Braddock*, 641 S.W.2d 359, 363 (Tex. App.—Corpus Christi 1982, no writ) (record established trial court's compliance with rule 327 where trial court offered defendants opportunity to present evidence and offer was refused). Similarly, a trial court properly denies a new trial when it holds a hearing and the party asserting misconduct discusses the affidavits but never attempts to admit the affidavits into evidence or present any other evidence of juror misconduct through live testimony. *Hagood v. Fishborn, Inc.*, No. 05-07-00690-CV, 2009 WL 264627, at *2 (Tex. App.—Dallas Feb. 5, 2009, pet. denied) (mem. op.).

In such a situation there is no evidence to support the complaining party's allegations of juror misconduct. *Id.* We see no reason why the evidentiary requirements of rule 327 should be interpreted any less stringently when the trial court grants new trial and sets aside the jury verdict.

Here, Gustafson argued below that his motion for new trial was "factually uncontroverted" because his motion "was on file . . . [m]ore than a month before today's hearing, two affidavits, no contrary evidence," and Gustafson repeatedly referred to his affidavits as "evidence." But Gustafson made no attempt to actually offer any sort of competent proof of his claims of juror misconduct nor did he attempt to introduce the affidavits themselves into evidence. *Cf. Golden Eagle Archery*, 24 S.W.3d at 364-65 (affidavits offered and admitted as evidence in addition to live testimony on hearing on juror misconduct). Similarly, the trial court did not announce it would rely on the affidavits as evidence and Zimmer did not agree to the use of the affidavits as evidence of Gustafson's claims. *Cf. Garrett v. United States Fid. & Guar. Co.*, 77 S.W.2d 1066, 1069 (Tex. Civ. App.—Dallas 1934) ("[T]he court announced that all affidavits on the issue of misconduct of the jury, attached to the pleadings, would be considered as evidence, and this action of the court was acquiesced in by the attorneys for the parties, so the attached affidavits thereby became evidence at the hearing on the motion."), *rev'd on other grounds*, 105 S.W.2d 868 (Tex. 1937). As a result, there was no competent evidence of juror misconduct in the record on which the trial court could base its order granting new trial.

Gustafson asserts that although he failed to offer testimony or other admissible evidence at the hearing in support of his allegations of jury misconduct, this failure was cured by Zimmer's lack of objection to the consideration of the issue based on affidavits and on its failure to seek a ruling on its evidentiary objections to his affidavits. He argues "[Zimmer] never objected that the affidavits attached to Gustafson's motion for new trial do not constitute

–10–

evidence upon which the trial court could rely." In so arguing, Gustafson ignores his obligation to satisfy his affirmative burden of proving jury misconduct. The party asserting jury misconduct must prove in an evidentiary hearing in open court that misconduct occurred and that it was material. *See* TEX. R. CIV. P. 327. Gustafson offered no evidence at the hearing on the motion for new trial. The juror affidavits served only to demonstrate Gustafson had sufficient evidence of jury misconduct to warrant an evidentiary hearing. *See Elston*, 596 S.W.2d at 217. Until Gustafson made a prima facie evidentiary showing at the hearing on juror misconduct, however, Zimmer had no burden to carry and no obligation to object that Gustafson had not carried his burden of proof. *Cf.* TEX. R. APP. P. 33.1(d) (in nonjury case, complaint of legal insufficiency may be made for first time on appeal). We conclude the trial court abused its discretion in granting new trial based only on affidavit evidence of juror misconduct.

Moreover, even if this Court were to conclude affidavit evidence is sufficient to carry the complaining party's burden on a motion for new trial to prove juror misconduct, the affidavits in this case are not sufficient. Gustafson asserted two forms of jury misconduct: Young's failure to reveal his mother-in-law lost the use of her legs and the jury's general disregard of the trial court's instruction not to discuss the case outside of deliberations, including discussions concerning Young's mother-in-law's ability to work. Neither constituted misconduct under the facts of this case.

An erroneous answer by a juror during voir dire warrants a new trial only if there is concealment by the juror. *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 851 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (citing *Dunn v. Sears Roebuck & Co.*, 371 S.W.2d 731, 735 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.)). Before concealment can be found, the questions asked must be direct and specific and call for disclosure. *Id.* The questions Gustafson complains Young answered incorrectly related only to injury. The record before the

trial court did not establish whether Young's mother-in-law lost the use of her legs by injury, by disease, or in some other fashion. Because the record did not establish how Young's mother-in-law lost the use of her legs, the record did not support a conclusion that Young failed to properly respond to the questions asked in voir dire or in the jury questionnaire. Accordingly, the trial court could not properly conclude Young engaged in jury misconduct by concealing a relevant fact during voir dire.

In addition, a trial court may grant new trial based on juror misconduct only if "it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." TEX. R. CIV. P. 327(a). The trial court concluded Young's non-disclosure was material and probably caused injury because the verdict in the case was 10–2. The trial court reasoned that if Young had reported that his mother-in-law had lost both her legs, Gustafson's counsel would have struck Young and the jury seated without Young would have ultimately been a hung jury. The record before the trial court does not support this conclusion.

Gustafson's counsel never testified he would have struck Young if he had learned of his mother-in-law's condition. Instead, Gustafson's counsel argued "[i]f this juror had disclosed during voir dire that there was an issue of a family member who had lost both their legs, but was still working, that would have been explored further either here at the bench, or we may have exercised a strike for cause [or] a peremptory strike." The equivocal statement that Gustafson's legal team "may have exercised a strike for cause or a peremptory strike" cannot lead to the conclusion that a different jury would have been seated had Young revealed his mother-in-law's condition.

Moreover, even if Gustafson's counsel had testified positively and without qualification he would have struck Young, that testimony alone would have been insufficient to establish

–12–

injury in the face of his contrary conduct with respect to other jurors who had disclosed they or a family member had suffered a serious bodily injury. At the conclusion of voir dire, Gustafson's counsel sought to exercise challenges for cause for a variety of reasons but did not challenge any potential juror based on the fact the juror or a family member ever had a serious bodily injury.

The supreme court's recent decision in *In re Whataburger Restaurants* is instructive. In that case, a juror failed to disclose she had previously been involved as a defendant in a lawsuit. *Whataburger*, 429 S.W.3d at 599. The moving party's attorney testified at the jury misconduct hearing that if the juror had made such a disclosure, he would have questioned her about those suits and would have struck her as a juror. The supreme court found this evidence insufficient on its own to establish the composition of the jury panel would have been different absent concealment by the potential juror. *Id.* at 599–600. The court concluded the attorney's testimony was speculative and insufficient when the actual conduct of the attorney at trial showed he did not strike other jurors who disclosed participation in lawsuits. *Id.* Just as in *Whataburger*, no evidence shows Young would have been struck from the panel had he disclosed his mother-in-law's condition.

The trial court also concluded a new trial was warranted because the jurors violated the court's admonitions:

> [T]o refrain from discussing the case prior to deliberations; to refrain from discussing the case at any time without all jurors present; to refrain from discussing, considering, or sharing any special knowledge or experiences with the other jurors; and to not discuss any evidence that was not admitted in the courtroom during the course of the trial.

The trial court found Young's discussion of his mother-in-law's ability to work even though she had lost the use of her legs and "repeated discussions regarding the merits of the case prior to the close of evidence and without all jurors present" constituted violations of its admonitions.

–13–

Neither of these bases sufficed to allow the trial court to disregard the jury's verdict and order a new trial.

"The fact that jurors violated a trial court's admonitory instructions is not alone sufficient to warrant a new trial." *Holland v. Lovelace*, 352 S.W.3d 777, 786 (Tex. App.—Dallas 2011, pet. denied). A party seeking new trial based on the jury's failure to follow admonitory instructions must establish probable injury. *Health Care Unlimited*, 429 S.W.3d at 602–03. To show probable injury from failure to follow the trial court's admonitory instructions, "there must be some indication in the record that the alleged misconduct most likely caused a juror to vote differently than he would otherwise have done on one or more issues vital to the judgment." *Id.* at 603 (quoting *Redinger v. Living, Inc.*, 689 S.W.2d 415, 419 (Tex. 1985)). Neither this Court nor the trial court may speculate about the impact of conduct outside of deliberations on the outcome of the case. *See Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 161 (Tex. App.—San Antonio 2008, pet. denied) ("Medistar did not produce any evidence at the motion for new trial hearing regarding the impact of the bailiff's communications on the jurors. Thus, we are left to speculate as to whether the bailiff's comments actually caused a juror to vote differently than he or she would otherwise have done absent the comments."). "We cannot manufacture injury by supposition or conjecture." *Doucet v. Owens-Corning Fiberglas Corp.*, 966 S.W.2d 161, 164 (Tex. App.—Beaumont 1998, writ denied). Unless the conduct shown was "so highly prejudicial and inimical to fairness" that it is facially harmful, the court may not presume that the jury misconduct alleged actually caused harm. *See Davis v. Damge*, 328 S.W.2d 203, 207 (Tex. Civ. App.—Houston 1959, writ ref'd n.r.e.) (discussing repeal of prior statute under which harm was presumed upon misconduct being proven); *see also Bell v. State*, 724 S.W.2d 780, 798 (Tex. Crim. App. 1986) ("Appellant effectively asks us to presume misconduct, as well as harm, which we decline to do.").

Gustafson attempted to meet his burden of establishing injury by arguing his inability to work was undisputed and the only "evidence" the jury heard that Gustafson was able to work came from juror Young's statements about his mother-in-law's ability to work. Gustafson thus reasoned a verdict that failed to award him damages must have been the result of Young's improper comments. The affidavits do not establish any particular juror was influenced to vote as he or she did on the liability questions as a result of the conversations described in the affidavits. Thus, they do not establish the verdict would have likely been different had the conduct alleged not occurred. In sum, the affidavits, even if permitted to be used as evidence on the motion for new trial, did not establish a basis for an order granting new trial premised on juror misconduct. Accordingly, the trial court clearly abused its discretion in granting new trial based on juror misconduct.

The trial court also concluded the jury's finding the Zimmer plate was not defective was against the great weight and preponderance of the evidence. A trial court has considerable discretion in granting a new trial, but that discretion has limits. *Columbia Med. Ctr.*, 290 S.W.3d at 210. Its "discretion should not, and does not, permit a trial judge to substitute his or her own views for that of the jury without a valid basis." *Id*. at 212. Although factual sufficiency review on mandamus following the grant of new trial is new to Texas and there are few cases in which such a review has been conducted, we see no reason to believe the standards for factual sufficiency review in new trial mandamus proceedings should differ from the standards of review on appeal. We may grant mandamus only where we find the trial court clearly abused its discretion, but the incorrect application of the law is an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Thus, when a trial court incorrectly determines the evidence is factually insufficient and orders a new trial on that basis, it abuses its discretion and mandamus is appropriate.

–15–

In evaluating the factual sufficiency of the evidence, a court must examine the entire record, considering the evidence in favor of and contrary to the challenged finding, and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, as Gustafson did in his motion for new trial, the party must demonstrate the adverse finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. The amount of evidence necessary to support the jury's verdict is far less than that necessary to warrant disregarding the jury's verdict. *See Bright v. Addison*, 171 S.W.3d 588, 595–96 (Tex. App.—Dallas 2005, pet. denied).

Evidence is factually sufficient to support the jury's verdict if the evidence is such that reasonable minds could differ on the meaning of the evidence or the inferences and conclusions to be drawn therefrom. *Cendant Mobility Servs. Corp. v. Falconer*, 135 S.W.3d 349, 352 (Tex. App.—Texarkana 2004, no pet.). We must be mindful that the jurors are the sole judges of the credibility of the witnesses, the weight to give their testimony, and the resolution of conflicts in the evidence. *See United Servs. Auto. Ass'n*, 2014 WL 4109756, at *7 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819–21 (Tex. 2005)). Appellate courts are not fact-finders and, like trial judges considering sufficiency as a part of a motion for new trial, may not assess the credibility of the witnesses or substitute their judgment for that of the trier of fact, even if a different conclusion could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). We must review all the evidence in a light favorable to the verdict and must assume the jurors resolved all conflicts in the evidence in accordance with that verdict. *City of Keller*, 168 S.W.3d at 821.

The trial court concluded the great weight of the evidence demonstrated the design of the Zimmer tibia plate was defective. To establish a design defect, a party must show the product involved in the case was defectively designed so as to be unreasonably dangerous taking into account the utility and risk involved in the use of the product, this defective design was a producing cause of the plaintiff's injuries, and a safer alternative design existed that would have prevented or significantly reduced the risk of injury and would have been economically and technologically feasible at the time the product left the defendant's control. *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999). Generally, proving the existence of a design defect requires competent expert testimony and objective proof that the defect the plaintiff has identified caused the injury. *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004). Gustafson argues the trial court's determination that the great weight of the evidence demonstrated the Zimmer plate was defective is supported by the admissions of Zimmer's own witnesses, which he characterizes as offering uncontroverted proof the Zimmer plate did not meet Zimmer's own criteria for validating the design.

In the process of developing the plate, Zimmer established design validation criteria. Zimmer's design validation criteria required the shaft of the plate to be stronger than the metaphyseal/transition area of the plate. These criteria became the basis for the Food and Drug Administration's approval of the marketing and sale of the plate. Gustafson argues the evidence at trial conclusively established the weakest point of the Zimmer plate was actually located in the shaft. The trial court determined this evidence to be uncontroverted.

Whether the weakest point of the Zimmer plate was located in the shaft area of the device was a subject of significant dispute in the case and was perhaps the single most extensively discussed topic during the trial. Gustafson supported his argument that the weakest point of the device was located in the shaft by using edited deposition testimony of Zimmer personnel

–17–

concerning an early drawing of the device not submitted to the FDA and which the Zimmer personnel stated was not used in the analysis or testing of the product. Gustafson argued the drawing showed, and the Zimmer employee deposition excerpts confirmed, the area that all conceded was the weakest point of the device was located in the shaft of the plate.

In contrast, these same Zimmer personnel when testifying live at the trial all said the actual analysis and testing of the product properly included the weakest point in the metaphyseal/transition area rather than in the shaft. They supported their explanations with detailed discussions of the process used to determine how the product would be analyzed and tested and what would be considered acceptable testing results. The Zimmer witnesses discussed in exhaustive detail the testing protocol for the plate. They expounded on the data the analysis and testing process produced. All testified the statement that the shaft of the plate was stronger than the metaphyseal/transition area was true based on the extensive analysis and testing of the product. The jury was entitled to believe their explanation of the apparent discrepancy between the early drawing and the actual results of the testing procedure and to determine Zimmer's statements to the FDA were truthful.

Gustafson also faulted the product as defectively designed based on its strength and bending stiffness. Gustafson's expert, Dr. Marthinus van Schoor, opined the Zimmer plate was defectively designed based on these characteristics. Dr. van Schoor supported his conclusion, in part, using a computer model he designed that compared the Zimmer plate to a tibial plate manufactured by a competitor. Dr. van Schoor's testimony was rebutted by the expert testimony of Dr. Brad James, an expert metallurgist engineer, who criticized Dr. van Schoor's analysis as "very, very inaccurate," Dr. van Schoor's calculations as "absolutely not" correct, and Dr. van Schoor's conclusions as "completely, totally wrong" because the test procedure Dr. van Schoor claimed to have used was not the methodology Dr. van Schoor actually used. Dr. James testified

–18–

that when he reran the tests Dr. van Schoor claimed to have performed using the test procedure as described by Dr. van Schoor, the Zimmer plate and the competitor's plate were found to be essentially equally strong.  Dr. James further stated it was "ridiculous to take one plate compared to another, and say, because this is not as strong or not as stiff [as the other] that it's defective."

Dr. van Schoor's methodology was also criticized by Kevin Greig, the engineering lead on the project, who told the jury Dr. van Schoor's analysis was based on an improper methodology using average strength.  Greig said the proper methodology required the identification and testing of the weakest point of the device because the average strength did not identify the point of likely failure.  Greig also pointed out that the bending stiffness test that was a centerpiece of Dr. van Schoor's opinion was antiquated, not required by the FDA, and did not yield particularly useful information because it failed to take into account the sorts of loads the plate would experience in the human body.  He explained the sort of testing and analysis actually conducted by Zimmer took into account a greater number of factors and yielded results that more accurately predicted the performance of the product in the human body.  Numerous witnesses also pointed out that strength was not the only relevant characteristic in determining whether a device such as Zimmer's had utility because a device could be designed in such a fashion that it was strong and rigid, but unusable because it was too stiff or too thick, which would impede bone healing and cause tissue irritation.  The evidence showed one of the reasons the Zimmer plate was commercially attractive was precisely because it was less stiff than the competitor's product that van Schoor contended was superior in terms of strength.

Based on all of this testimony, the jury was entitled to conclude the Zimmer plate was adequately strong and possessed sufficient bending stiffness for its intended use.  It could reasonably conclude the design of the product was not unreasonably dangerous taking into

account the utility of the product. Thus, there was sufficient evidence for the jury to conclude the product was not defectively designed.

The jury could also have reasonably concluded the failure of the Zimmer plate was not the producing cause of Gustafson's injuries.[4]  Numerous witnesses, including two of Gustafson's treating physicians, also offered evidence that was at odds with Gustafson's theory that the defective design of the Zimmer plate caused his injury.  Gustafson's orthopedist, Dr. Henry Hendrix, categorized Gustafson's initial injury as a limb-threatening injury that could result in amputation.  He testified that healing of this kind of injury would be difficult under any circumstances due to the nature of the fracture and an extensive healing time would be required, noting the limb-threatening nature of the injury "says there's going to be potentially multiple procedures and less optimal functional outcome."

Dr. Hendrix's treatment notes made immediately after the accident stated, "With this soft-tissue injury, the scarring, the stiffness, and the muscle change that occurs, his gait pattern will be permanently altered as will his functional capability. . . . Certainly this is a significant injury for an individual his age and activity level."  The notes identified potential risks of the injury discussed with Gustafson at the time of his injury as "infection, injury to nerves and vessels, scarring, stiffness, weakness, need for further surgery, compartment syndrome, need for hardware removal, and failure to heal."  Dr. Hendrix further testified any sort of stabilization device was a "time-buying agent" that is "meant to go into place until the fracture heals and then the stress is to be taken off of the implant.  There's not really any metal in the body that has been made to have permanent stress put across it without the fracture healing and then taking the stress off that implant that won't fail."  The neurologist Gustafson saw after the second plate

---

[4] The jury answered "no" to the question, "Was there a design defect in the Zimmer Plate at the time it left the possession of Zimmer that was a producing cause of the occurrences in question?"  The jury could have answered this question "no" either by determining the Zimmer plate was not defectively designed or it was not the producing cause of Gustafson's injuries.

broke attributed the nerve pain Gustafson currently experiences to the initial trauma of the motorcycle accident rather than failure of the Zimmer plate.

Dr. James testified that, like any bone plate, the Zimmer plate was intended to be a temporary measure to provide support while the bone healed and was "not intended to withstand the loads from the human body forever." He told the jury the American Society for Testing and Materials standards required the plate to withstand cyclic loading for "two to three months," while each of the Zimmer plates remained in place for roughly a year. He stated, "[t]here are no bone plates that are incapable of breaking." It was Dr. James' opinion that both Zimmer plates broke due to fatigue as a result of extended weight bearing because the bone had not healed sufficiently to remove the load from the plates rather than due to the Zimmer plate being defectively designed.

Dr. Charles Clark, a physician who specializes in orthopedic surgery and has an engineering background, testified that based on Gustafson's x-rays and medical records there was no indication the Zimmer plate was not the right strength or stiffness for the purposes it was used; rather, he concluded the Zimmer plates failed because Gustafson's bone had not healed, causing the plate to have to continue to carry all of the load that would normally be on the bone. Clark said there was no reason to fault the plate because it broke under those circumstances. As Clark said, "If bone doesn't heal any hardware is going to break." Clark stated that the Zimmer plate had performed its job as intended by providing stability while Gustafson's body attempted to heal the severe fracture Gustafson endured and that Gustafson's disability is related to his original injury rather than to the failure of the Zimmer plate. Specifically, he explained Gustafson's present condition is a result of both the continuing effect of the original injury and the atrophy of Gustafson's muscles during the healing process.

The jury was entitled to believe either party's explanation of the evidence both with regard to the design of the product and whether the product caused Gustafson's injuries. Here, the evidence was sufficient for the jury to find the Zimmer plate was not defectively designed, but rather taking into account the severity of Gustafson's injury, the product properly performed the function for which it was intended. The jury could also reasonably conclude the producing cause of Gustafson's injuries was not the defective design of the Zimmer plate, but rather the consistent application of an excessive load to the device as a result of the failure of Gustafson's injury to heal during the reasonable lifespan of the plate. The trial court incorrectly substituted its credibility decisions for those of the jury and weighed the evidence differently than the jury weighed the evidence. As a result, it improperly applied the law in granting new trial and abused its discretion in doing so. Zimmer is entitled to mandamus relief.

Gustafson argues if this Court concludes his failure to offer evidence of juror misconduct in support of his motion for new trial was fatal to his motion for new trial, the Court should remand the case to the trial court to allow it to conduct an evidentiary hearing on the question of jury misconduct. The supreme court has remanded mandamus proceedings to the trial court when the trial court's reasons for granting new trial are unclear. *Columbia Med. Ctr.,* 290 S.W.3d at 215 ("We conditionally grant relief. We direct the trial court to specify the reasons it refused to enter judgment on the jury verdict and ordered a new trial."). When, however, a trial court's reasons for granting a new trial are clear but invalid, ordering the trial court to enter judgment on the verdict, rather than remanding to the trial court, is proper. *United Servs. Auto. Ass'n,* 2014 WL 4109756, at *16. Parties who fail to meet their burden of proof are not entitled to repeated attempts to meet their burden. *See Brannen v. City of Houston*, 153 S.W.2d 676, 678 (Tex. Civ. App.—Galveston 1941, writ ref'd) (affirming denial of bill of review where party asserted it did not know of alleged juror misconduct until judgment was final). "The remedy for

setting aside a jury's verdict for misconduct is to allege the facts constituting such misconduct in the motion for a new trial, and at the time the motion for a new trial is presented the hearing is had on the alleged misconduct of the jury." *Id*.; *see also Hernandez*, 641 S.W.2d at 362 ("Although the defendants, at the second hearing [on the motion for new trial alleging juror misconduct], indicated an intention to offer evidence at a future date, it was their burden to present evidence *at that time*."). Where, as here, a party loses because it fails to carry its burden of proof, it should not be entitled to a second attempt. *See Design Trends Imports v. Print Source, Inc.*, No. 05-93-01643-CV, 1994 WL 728870, at *6 n.8 (Tex. App.—Dallas Dec. 22, 1994, no writ) (mem. op., not designated for publication) (discussing briefing waivers).

While it is understandable a trial court would seek to enforce compliance with its instructions to the jurors, granting a new trial for reasons not supported by the record or the law is an abuse of discretion. We conditionally grant Zimmer's petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate its April 15, 2014 "Order Granting Plaintiff's Motion for New Trial."

140940F.P05

/Molly Francis/

MOLLY FRANCIS
JUSTICE