**Nash O. THOMPSON, Appellant,**

v.

**Joe W. COPELAND, Appellee.**

No. 10383.

Court of Civil Appeals of Texas.

Austin.

April 4, 1956.

Rehearing Denied April 18, 1956.

Foster, Lewis, Langley & Goode, San Antonio, for appellant.

Upton, Upton, Baker & Griffis, San Angelo, Turpin, Kerr & Smith, Raymond A. Lynch, Midland, for appellee.

HUGHES, Justice.

This is a personal injury damage suit arising from a collision between a Chevrolet passenger car driven by appellant, Nash O. Thompson, and the protruding blade of a bulldozer or scraper being carried on a low bed trailer pulled by a truck operated by Florentino Flores, an employee of appellee Joe W. Copeland.

The bulldozer was being transported under authority of an "overwidth permit" issued by the State Highway Department.

The collision occurred at 5:45 P.M., 23 minutes before sunset, on October 18, 1954, a clear, dry day, on a 20-foot bridge (about 21 feet including unpaved strips between pavement and bridge uprights) on U. S. Highway 87 in Sterling County.

The scraper blade was 12 feet wide and its overhang across the highway center stripe was at least one and one half feet.

Appellant was driving north, Flores south. The point of the collision was in the north third of the bridge which was 330 feet long.

A jury trial resulted in judgment for appellee.

Appellant presents but two points both of which relate to jury misconduct. They present the contention that overt acts constituting jury misconduct were established by the undisputed evidence and that probable injury therefrom was shown as a matter of law.

We sustain both points.

Seven of the twelve jurors testified on the new trial hearing and the foreman, Mr. Finis Westbrook, who was absent from the county when the hearing was held, executed a supporting affidavit, as to jury misconduct, attached to the motion for a new trial.

While the testimony of the seven jurors is not identical and some remembered matters more fully and clearly than others their testimony is consistent and without substantial contradiction.

The first twenty issues in the court's charge were so-called "plaintiff's issues." They were answered numerically and without difficulty and favorably to appellant.

Issue No. 21 was the first defensive issue. It inquired if appellant failed to keep a proper lookout.

Some four or five ballots were taken on this issue the majority, some said as many as nine, voting each time to answer the issue "no", favorable to appellant.

A discussion followed over this issue which was characterized:

"It was quite a long discussion." Juror Garland N. Moore.

"There was quite a little discussion on this issue." Juror John Hamilton.

"I would say there was a moderate discussion." Juror Olvie L. Cole.

"There was a * * * considerable discussion * * * a rather lengthy discussion." Juror Harold Emery.

There was a "long discussion." Juror H. W. Smith.

"* * * there sure was a discussion * * * I'd say it was lengthy. * * *" Juror Ewing McEntire.

"* * * there was a pretty big discussion." Juror Noel P. Hanson.

It began to appear that the jury was deadlocked. More, and at least better, persuasion was needed. It was supplied and to show how we quote from the record:

"* * * Now, about this time the discussion was being carried out and we were all getting pretty tired sitting there, and once in a while someone would walk upstairs and come back and have another ballot to see if things were changed; and some time after someone made the remark it looked like the jury was hung, we all got back down around the table and we were trying pretty hard to get our heads together and reach a unanimous decision on this particular issue, and I happened to draw the chair on the right hand side of the foreman of the jury, Finis, and Finis made the remark that 'well, fellows, it doesn't make a whole lot of difference how you vote this question, it seems that the first 20 questions were in favor of the plaintiff (if I have the correct term, now), Mr. Nash Thompson anyway', and then I don't recall, but it is very probable that I repeated it, being on the right hand side; and then I very definitely recall, another fellow on down the other end of the table who has a rather clear and loud voice expressing himself that he agreed, that sounded logical to him. * * *

"Well, attempting to quote him, very honestly and to the best of my ability his remark was to the effect that owing to the fact that the previous questions had apparently in our estimation been answered in favor of Mr. Nash Thompson, then it was his opinion that the outcome of the trial, or whatever you call it, would not be affected directly or completely by the answer to a single question, specifically Special Issue 21, the answer to that question * * *" Juror McEntire.

"He [Mr. Westbrook] couldn't see where it would have much effect on the recovery of Nash Thompson to answer the question anyway, either way we wanted to." Juror Hanson.

"Well, the best I remember about the statement, the statement was made that the question, 21, wouldn't make any difference according to the way Nash Thompson's judgment would come out on the end." Juror Moore.

"That one of the jurors made the statement that it (the answer to Special Issue 21) would not have, to his opinion, anything to do with the final decision of the case." Juror Hamilton.

"Somebody said 'well, it doesn't make any difference on this one particular issue or question, as to how the others will be.'" Juror Cole.

"Yes, there was a statement made in there to the effect that if we vote on this, we'd say no, he didn't keep a proper lookout, it wouldn't affect the judgment one way or the other." Juror Emery.

"* * * no matter how we answered this one, it wouldn't affect our awarding the judgment to Nash Thompson, * * *" Juror Smith.

The record does not show that any juror disagreed with the statement that the answer to issue 21 was immaterial.

After such statement was made the majority of jurors who had voted "no" on this issue changed to a "yes" vote.

Issue No. 22 inquiring if the failure of appellant to keep a proper lookout was a proximate cause of the collision was answered "yes".

Issue No. 26 found that red flags were affixed to the end of the bulldozer blade nearest to the center line of the bridge.

Issue No. 27 found that appellant failed to observe these red flags and Issues 28 and 29 found that such failure was negligence and a proximate cause of the collision.

The answers to these issues followed the same pattern made in answering Issue 21. There was the same division of votes, the same statement of immateriality and the same subsequent switch from a "no" to a "yes" answer.

The jury further found that appellant failed to "heed" these red flags but that this was not negligence.

Many other issues were answered favorably to appellant including a finding for $37,500 damages.

On the new trial hearing there was admitted in evidence testimony of the jurors that, on the one hand, they were influenced to change their vote by the improper statements under consideration and, on the other hand, that they returned their verdict strictly according to the law and the evidence. This testimony was inadmissible under the rule that the mental processes by which a juror reached a verdict may not be shown either to preserve or destroy such verdict. Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642. We have not considered such testimony here.

It is our opinion that the overt acts relied upon to constitute jury misconduct have been established by undisputed evidence of such nature as not to warrant an inference that the trial court considered it incredible.

It is also our opinion that these overt acts constituted jury misconduct.

In Pryor v. New St. Anthony Hotel Co., Tex.Civ.App., 146 S.W.2d 428, 431, San Antonio, writ refused,[1] it was stated:

"It is a settled rule of law in this State that to induce a juror to change his answer to a material issue, by the representation on the part of other jurors that it is immaterial how such issue is answered, insofar as plaintiff's recovery is concerned, constitutes misconduct on the part of the jury."

Many cases are cited to support this statement.

This character of overt act was treated as jury misconduct by the San Antonio Court of Civil Appeals in Trousdale v. Texas & N. O. R. Co., 264 S.W.2d 489, which opinion also cites many cases on the subject. In the same case, 276 S.W.2d 242, 245, the Supreme Court quoted, apparently with approval, the quotation we have made from Pryor v. New St. Anthony Hotel, and, at any rate, treated overt acts of the nature involved here as jury misconduct.[2]

A recent case in which an overt act of this nature was treated as jury misconduct is Kimble v. Younger Bros., Tex.Civ.App., 283 S.W.2d 254, Galv. writ ref. N.R.E.

Appellee presses upon us the Supreme Court decision in Whited v. Powell, 285 S.W.2d 364, where, for the first time, the court held that a juror's expressed misconstruction of the court's charge was not jury misconduct. We appreciate the forcefulness of appellee's argument but since the Court there treated as jury misconduct overt acts similar to those here we have concluded that the Court in Whited did not intend to overrule all cases which hold jury misconduct reflected by proof of overt acts of the nature shown here.

The prejudicial effect of the misconduct of the jury in this case is obvious.

---

1. This case was not decided under existing Rules of Procedure but we do not understand present Rule 327, T.R.C.P. to define or re-define "jury misconduct."

2. The four dissenting justices in Trousdale stated "The majority opinion holds that probable injury is not shown by *conduct on the part of the jurors which the opinion admits constitutes misconduct.*"

The merits of this case reflect a deliberate, though legal, violation of one of the cardinal rules of safe driving on a public highway—stay on your side of the road. Appellee encroached on appellant's side of the road by at least a foot and a half with a dangerous instrument weighing 30,000 pounds. The jury found, without difficulty, that he was negligent and but for the misconduct of the jury there in all probability would not have been a finding that appellant was contributorily negligent. Not only probable but very near positive injury is shown by this record to have been visited upon appellant by the jury's misconduct.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.