

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

_____

No. 08-24-00350-CV

_____

In re R.E.S. and P.R.S.

On Appeal from the 383rd District Court
El Paso County, Texas
Trial Court No. 2018DCM2671

## **OPINION**

This original proceeding arises from a jury verdict terminating the parental rights of Real Party in Interest, T.J.P. (Father), with respect to E.A.P. (the Child), in a private suit between Father and Relators, R.E.S. (Uncle) and P.R.S. (Aunt). In two issues, Aunt and Uncle challenge the trial court's grant of Father's motion for new trial, arguing: (1) the evidence is factually and legally sufficient to support the jury's endangerment and best interest findings, and (2) there was no new

admissible evidence of juror and bailiff misconduct to warrant a new trial. We conditionally grant mandamus relief.

## I. BACKGROUND

### A. The underlying proceedings

Following Father's release from a 13-month prison sentence, he filed his Petition to Modify Parent-Child Relationship (Petition to Modify) on September 21, 2020. At the time, the Child was three years old and had been living with Aunt and Uncle since January 31, 2019. Father sought to modify the June 7, 2018 Agreed Order in Suit Affecting the Parent-Child Relationship (Agreed Order), which had appointed Mother and Father as joint managing conservators of the Child, with Mother having the exclusive right to designate and maintain the Child's primary residence.

Through his Petition to Modify, Father sought to have the exclusive right to designate and maintain the Child's primary residence. Aunt and Uncle learned of Father's release from prison through this petition and intervened on October 1, 2020. As of this date, Aunt and Uncle had actual care, control, and possession of the Child for approximately two years.[1] Aunt and Uncle intervened to terminate Father's parental rights or, alternatively, to be appointed as joint managing conservators with exclusive rights over the Child. Although Aunt and Uncle also sought to terminate the parental rights of Mother, this original proceeding concerns only the termination of Father's parental rights, as Mother voluntarily relinquished her rights in 2021 and is not a party to this original proceeding.

---

[1] The provision in place at the time provided that a "person . . . who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" has standing to file suit. Act of April 9, 2019, 86th Leg., R.S., ch. 130, § 2, sec. 102.003(a)(9), 2019 Tex. Gen. Laws 220, 221 (amended 2019) (current version at Tex. Fam. Code Ann. § 102.003(a)(9)).

**B. The trial**

A jury trial was held in August 2024. At the time of trial, the Child was six years old and continued to live with Aunt and Uncle. As a preliminary matter and outside the jury's presence, the trial court ruled that only CPS records dated after the Agreed Order would be admitted into evidence. Several witnesses testified about the Child's well-being, caregiving environment, and the parties' actions and circumstances leading to and following the Child's removal and placement with Aunt and Uncle.

Father testified about his history of addiction to opiates, methamphetamine, and heroine. He stated he completed a substance abuse program and therapy in 2017 while in prison and had maintained his sobriety for over five years. Since the filing of his modification suit, Father had taken about eight random drug tests, all of which were negative. Father also testified to his stability in employment and family life, and his efforts to build a relationship with the Child. He stated that he filed for modification to become the exclusive parent with the right to designate the Child's residence, believing it was in the Child's best interest to live with him. Father expressed appreciation for Aunt and Uncle, acknowledged the positive role they play in the Child's life, and stated he wants them to remain involved in the Child's life should he be appointed as the primary parent.

Father's wife testified on behalf of Father. She described their family home and dynamic and portrayed Father as a caring parent, while also acknowledging her own history of alcohol abuse. Father's own father also testified positively of Father's progress and of the bond Father shares with the Child. The Child's therapist also testified on Father's behalf. The therapist described the Child's emotional state and the behavioral differences she observed between the two households. She testified that the Child referred to both Aunt and Uncle, and Father and Father's

3

wife, as "mom and dad" and expressed the Child feeling "stuck in the middle." She also testified she believed it would negatively affect the Child to lose his relationship with Father.

Aunt and Uncle took the stand on their own behalf and testified about the changes they observed in the Child's behavior after visits with Father began. They received the Child when he was one and explained that after overnight visits with Father began, the Child started experiencing significant emotional and behavioral issues, including night terrors, anxiety, bed-wetting and defecation, and difficulties at school. According to their testimony, they believed it was in the Child's best interest to terminate Father's parental rights and for the Child to remain with them indefinitely, or alternatively, to be appointed joint managing conservators with exclusive rights over the Child. They acknowledged that they had not voluntarily allowed Father access to the Child and were hesitant about including Father in the Child's life.

Mother testified on Aunt and Uncle's behalf. The Department first became involved in 2017 while Mother was in jail, where she learned she was pregnant with the Child and reported her drug use. Mother also testified about her and Father's past struggles during their relationship, including their past drug use and Father's physical violence toward her during and after her pregnancy with the Child. Mother's older son, R.A.M., recounted the conditions he experienced while living with them during that time and confirmed Mother's account of Father's physical violence toward her. Mother also testified to incidents of Father's criminal conduct. Mother testified that while she was pregnant with the Child, Father convinced her to steal baby items with him from a department store. Father was eventually arrested and officers discovered heroin in his possession. Following the Child's birth and removal, Father was arrested again for failing to present identification and was found in possession of heroin. A few months later, he was arrested again for harboring undocumented immigrants and served a 13-month prison sentence.

4

A CPS investigator also testified and discussed the outcome of a report based on suspicions that Father was seeing the Child unsupervised when he was not supposed to. Allegations of physical abuse were ruled out and a finding of "unable to determine" regarding neglectful supervision was found based on conflicting statements. During this investigation, the Child tested positive for methamphetamines and drug paraphernalia was found in Father's apartment. A family drug court coordinator also testified on behalf of Aunt and Uncle. The coordinator provided background on Father's earlier participation in a substance abuse recovery program and noted his eventual discharge from it for noncompliance.

The parties rested and closed, and the jury charge first presented questions regarding termination. If the evidence supported termination, the charge instructed the jurors to skip the conservatorship questions and proceed directly to questions concerning attorney's fees. The jury returned a verdict terminating Father's parental rights under Subsections D and E of § 161.001(b)(1) of the Texas Family Code, and found termination was in the Child's best interest. *See* Tex. Fam. Code Ann. 161.001(b)(1)(D), (E), (2).

## C.  Post-trial motions

Father filed his motion for Judgment Notwithstanding the Verdict (JNOV) and motion for new trial on the same day. Father's JNOV argued that the evidence was legally insufficient to support the jury's endangerment and best interest findings, and that an inconsistent juror poll further warranted setting aside the jury's verdict. The motion for new trial challenged the legal and factual sufficiency of the jury's endangerment and best interest findings. Father also asserted grounds of juror confusion, an inconsistent juror poll, juror misconduct, and bailiff misconduct, as additional grounds for a new trial. In support of the new-trial motion, Father submitted his own affidavit, the jury charge, and affidavits from three jurors.

5

A hearing on both motions was held on November 20, 2024. At the hearing, no live testimony was heard, and the trial court admitted the three juror affidavits. The trial court ultimately denied Father's JNOV and granted his motion for new trial. The trial court provided two grounds in granting the motion for new trial: (1) the evidence was legally and factually insufficient to support the jury's findings, and (2) newly discovered evidence of certain misconduct warrants a new trial. This original proceeding challenging the trial court's grant of the motion for new trial followed.

## II. MANDAMUS

Mandamus may issue to correct a clear abuse of discretion when there is no other adequate remedy by law. *In re Essex Ins. Co.*, 450 S.W.3d 524, 526 (Tex. 2014) (orig. proceeding). To obtain mandamus relief, a relator must generally satisfy two requirements: (1) show relator has no adequate remedy at law; and (2) establish the trial court committed a clear abuse of discretion. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The Texas Supreme Court has recognized that there is no adequate remedy by appeal when a trial court issues an erroneous new-trial order. *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 299 (Tex. 2023) (orig. proceeding). Accordingly, the first requirement is met, and our inquiry becomes whether the trial court abused its discretion in granting a new trial. A trial court abuses its discretion when its ruling amounts to a clear and prejudicial error of law, or when it fails to correctly analyze or apply the law to the facts. *In re H.E.B. Grocery Co., L.P.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (orig. proceeding) (per curiam).

## III. MOTION FOR NEW TRIAL

Rule 320 of the Texas Rules of Civil Procedure addresses new trials and provides, in part:

6

New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall direct. New trials may be granted when the damages are manifestly too small or too large.

Tex. R. Civ. P. 320. As the Texas Supreme Court has stated, "Texas trial courts have historically been afforded broad discretion in granting new trials. But that discretion is not limitless." *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210 (Tex. 2009) (orig. proceeding) (internal citation omitted). Such discretion does not permit a trial judge to substitute his or her own findings for that of the jury. *Id.* at 212. Jury trials are a cornerstone of our constitutional system for resolving disputes when the parties cannot reach a resolution on their own. *Id.* at 211 (citing Tex. Const. art. I, § 15, art. V, § 10; *Wal–Mart Stores, Inc. v. Seale*, 904 S.W.2d 718, 722 (Tex. App.—San Antonio 1995, no writ)). And when parties choose to resolve a legal dispute by jury trial, both they and the public generally expect that a jury verdict will close the trial process. *See Columbia*, 290 S.W.3d at 213; *see also In re Wong*, No. 08-24-00354-CV, 2024 WL 4983171, at *3 (Tex. App.—El Paso Dec. 4, 2024, orig. proceeding) (mem. op). "[B]ecause disregarding a jury's verdict is an unusually serious act that imperils a constitutional value of immense importance—the authority of a jury—the trial court may only do so when clearly supported by sound reasons." *In re Lemus*, No. 13-25-00120-CV, 2025 WL 1722401, at *2 (Tex. App.—Corpus Christi June 20, 2025, orig. proceeding) (mem. op.) (quoting *In re Rudolph Auto., LLC*, 674 S.W.3d at 302) (cleaned up). Accordingly, trial courts are required to "provide litigants with an understandable, reasonably specific explanation for setting aside a jury verdict and ordering a new trial." *In re Bent*, 487 S.W.3d 170, 173 (Tex. 2016) (orig. proceeding) (cleaned up); *Columbia*, 290 S.W.3d at 213. This requirement is generally satisfied when a trial court's stated bases is "a reason for which a new trial is legally appropriate" and "is specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the

7

articulated reasons from the particular facts and circumstances of the case at hand." *In re Bent*, 487 S.W.3d at 173 (quoting *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding)). If the trial court's order granting a new trial satisfies these facial requirements, appellate courts are then required to "conduct a merits review of the bases for a new trial order" and grant mandamus relief "[i]f the record does not support the trial court's rationale for ordering a new trial." *Id.* (citing *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 749 (Tex. 2013) (orig. proceeding)). "In short, we follow a two-step process: first, we review the sufficiency of the trial court's stated reasons for granting a new trial; second, if the stated reasons are facially valid, we conduct a merits-based review of the reasons given." *In re Wong*, No. 08-25-00098-CV, 2025 WL 2055536, at *3 (Tex. App.—El Paso, July 22, 2025, orig. proceeding) (mem. op.) (citing *In re United Scaffolding*, 377 S.W.3d at 688–89; *In re Toyota*, 407 S.W.3d at 749, 758).

Here, the new-trial order provided two grounds for setting aside the jury's verdict: (1) the evidence was legally and factually insufficient to support the jury's findings of endangerment and best interest; and (2) newly discovered evidence of juror and bailiff misconduct warrants a new trial. We begin with the challenge to the sufficiency of the evidence.

## A. Legal and factual sufficiency

In their first issue, Aunt and Uncle challenge the trial court's grant of a new trial, arguing that the evidence was legally and factually sufficient to support the jury's endangerment and best interest findings. They contend that the trial court's order "improperly focused only on evidence supporting Father's requested relief and ignored the evidence supporting the jury's verdict[.]" In response, Father maintains the trial court did not abuse its discretion "because the reasons provided in its order were clearly identified, legally appropriate and reasonably specific." We disagree and

8

find that the bases of the trial court's order concerning the sufficiency of the evidence does not comply with the facial requirements established in *Columbia* and *United Scaffolding*.

### (1) Applicable law and standard of review

A parent's "right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right." *Int. of A.C.*, 560 S.W.3d 624, 629–30 (Tex. 2018) (citing *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)). And although parental rights are constitutional, they are not absolute, and "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent–child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Int. of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Texas Family Code § 161.001 "balances the convergent and divergent interests of parent and child" and permits termination of a parent–child relationship only if: (1) the parent's conduct satisfies at least one statutory ground for termination; and (2) termination is in the best interest of the child. *Int. of A.C.*, 560 S.W.3d at 630. Due process mandates clear and convincing evidence for each element. *Int. of N.G.*, 577 S.W.3d 230, 235 (Tex. 2019). Evidence is clear and convincing if it is of the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*.; Tex. Fam. Code Ann. § 101.007.

A single ground under Texas Family Code § 161.001(b)(1)(A)–(V) is sufficient to uphold termination on appeal, in addition to upholding a challenged best-interest finding. *Int. of N.G.*, 577 S.W.3d at 237. However, when sufficiency challenges are made under Subsections D or E, due process requires that courts review the sufficiency of the evidence under both subsections because of the future consequences of those findings in providing predicates for terminating a parent's right

9

to other children. Tex. Fam. Code Ann. § 161.001(b)(1)(M) (parental rights may be terminated if parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state").

Subsection D allows termination if the court finds, by clear and convincing evidence, that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. 161.001(b)(1)(D). The focus of endangerment is on the child's surroundings and environment, specifically, the "suitability of the child's living conditions as well as the conduct of parents or others in the home." *Int. of O.E.R.*, 573 S.W.3d 896, 905 (Tex. App.—El Paso 2019, no pet.).

Subsection E focuses more on parental conduct and allows termination if the court finds, by clear and convincing evidence, that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. 161.001(b)(1)(E). Proof of endangerment is required, which means exposure to loss or injury, or to jeopardize a child's emotional or physical health. *Castaneda v. Texas Dep't of Prot. and Regul. Servs.*, 148 S.W.3d 509, 522 (Tex. App.—El Paso 2004, pet. denied). The cause of the danger to the child must be the parent's conduct alone, as evidenced by the parent's actions, omissions, or failure to act. *Id.* Courts must also examine what the parent did both before and after the child was born. *Id*. The conduct need not have been directed at the child, nor must it have resulted in actual harm to the child. *Id*. Additionally, Subsection E demands more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id*.

10

To support termination of parental rights, the law requires both clear and convincing evidence of at least one predicate finding, and that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001; *Int. of R.J.G.*, 681 S.W.3d 370, 377 (Tex. 2023). In determining whether the evidence is sufficient to support the jury's finding that termination is in the child's best interest, courts employ the *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals . . . ; (G) the stability of the home . . . ; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Id*. These factors are not exhaustive, and a court may consider other factors. *Int. of K-A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.). Additionally, evidence of each factor is not required to terminate the parent-child relationship and the focus for this determination is on the child, not the parent. *Id*.

When the legal sufficiency of the evidence is challenged in a parental termination case, courts review all the evidence in the light most favorable to the finding to "determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Int. of J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *Int. of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). Courts defer to the factfinder's conclusions, indulge every reasonable inference supporting the finding, and presume the factfinder resolved any disputed facts in favor of the findings. *Int. of L.D.C.*, 622 S.W.3d 63, 69 (Tex. App.—El Paso 2020, no pet.). As a corollary to

11

this requirement, courts must disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *Int. of J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, courts must likewise give due consideration to the evidence the factfinder could have reasonably found to be clear and convincing and determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth" of the allegations. *Id.* at 266. Courts must not substitute their judgment for that of the factfinder. *Int. of D.R.V.*, No. 08-22-00238-CV, 2023 WL 2544577, at *5 (Tex. App.—El Paso Mar. 16, 2023, no pet.) (mem. op.). The evidence is factually insufficient when, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Int. of J.F.C.*, 96 S.W.3d at 266.

### (2) Analysis

We begin by reviewing the new-trial order to determine whether it passes muster under *Columbia* and *United Scaffolding*. In the first step of the two-step analysis, we consider whether the new-trial order provides a clear basis as to why the jury verdict was set aside. *In re Columbia*, 290 S.W.3d at 213; *In re United Scaffolding*, 377 S.W.3d at 688–89. To be facially valid, the articulated rationale must be (1) "a reason for which a new trial is legally appropriate" and (2) "specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand." *In re United Scaffolding*, 377 S.W.3d at 688–89.

In granting Father's motion for new trial, the trial court articulated its rationale in a three-page order. The first two paragraphs of the new-trial order provide:

12

A fair trial includes a jury properly instructed on the issues authorized and support[ed] by the law governing the case. In a case involving Termination of parental [rights], the "death penalty" of civil cases, the importance of safeguarding a parent['s] right to a fair trial is even more pronounced.

The jury verdict was factually and legally insufficient to support section TFC 161.001(b)(1)(D) and (E) findings as grounds for termination OR best interests. Due process mandates a heightened standard of proof which is clear and convincing evidence, and that burden of proof was always on the Samaniego[]s. There was not clear and convincing evidence to support the jury finding of termination. There was no measure or degree of proof that would produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. The Court finds that the verdict is contrary to the overwhelming weight of all relevant evidence as to be clearly wrong and unjust.

We begin by pointing out that the trial court's initial explanation constitutes the type of "muddled" factual and legal sufficiency challenge that the Texas Supreme Court has disapproved in evaluating a trial court's ruling on a motion for new trial. *See In re Bent*, 487 S.W.3d at 179. For instance, the rationale that the evidence is "contrary to the great weight and preponderance of the evidence" suggests a factual sufficiency analysis, but other rationale, such as claims that much of the evidence is uncontroverted, suggests a legal sufficiency analysis. If true, Aunt and Uncle conclusively established their claim and Father presented no evidence. Under such circumstances, as noted by the Texas Supreme Court in *Bent*, "it appears judgment notwithstanding the verdict, not a new trial, was appropriate." *Id.* at 175, 179.

The first two paragraphs of the new-trial order set forth the legal standards applicable to the relevant family law issues. As the Texas Supreme Court has articulated, "the mere recitation of a legal standard, such as a statement that a finding is against the great weight and preponderance of the evidence, will not suffice." *In re United Scaffolding, Inc.*, 377 S.W.3d at 689. We turn to the remainder of the new-trial order, which provides a lengthy recitation of certain testimony:

The evidence included but was not limited to testimony that the child was extremely bonded to his father and had a relationship with him, his wife and extended family

13

since 2021; that the child's wishes were to continue a relationship with his father; that he considers his father/stepmom and the Samaniego[]s his family per the therapist and pictures he drew; that father had a standard possession order since December 2023; that the father had a substance abuse problem prior to his incarceration over 5 years ago; that the father attended substance abuse counseling and therapy in prison; that father had maintained his sobriety since his release from prison; that he was released early from parole and submitted to drug tests; that upon release he immediately within months attempted to reconnect with a relationship with his child, that all his hair follicle tests that he voluntarily submitted to during the pendency of this case were negative; that he was incarcerated when the child was removed due to actions by the mother; that he has maintained gainful and consistent employment since his release from prison; that he has familial and spiritual support; that he complied with the Court's orders and respected that reconnecting to his child would take time; that he consistently participated in therapy and family counseling and wished to enter into coparenting counseling with the Samaniego[]s as recommended by the therapist; that the therapist testified to a bond and close relationship between the father and the child and that to end that relationship would have detrimental effects on the child; that the aunt/uncle had not thought about post termination plans or addressing the deprivation of that relationship and in fact intended to terminate counseling telling the child that Mr. Perez was "just gone."

In reviewing the Holley factors, the jury's findings are contrary to the evidence presented and are legally and factually insufficient to establish a firm conviction in the mind of the trial court that termination of Mr. Perez's parental rights is in the child's best interest. The child's desire to maintain a relationship with his biological father and extended family was uncontroverted. The child's emotional and physical needs were being met now and there was no clear and convincing evidence that the father would fail in the future. There was no clear and convincing evidence that the present and future actions would warrant termination despite father's past actions which were remote in time other than speculation as to relapse. There was no clear and convincing evidence that Tom Perez lacked parenting abilities now. There was no clear and convincing evidence that father did not comply with the programs ordered by the Court and therapist indicating his present and future intention. There was no clear and convincing evidence that the severing of the relationship would have a positive effect on the child, in fact the contrary testimony by the therapist indicated that child would suffer if his father was removed from his life. Father's testimony indicated his goals for the child and continued relationship with the Samaniego[]s. Conversely, the Samaniego[]s repeatedly indicated they did not have a plan on addressing the child's emotional needs post termination.

The trial court advanced 26 evidentiary points to support its challenge to the sufficiency of the evidence. Aunt and Uncle maintain that "instead of considering the evidence as a whole,

14

Respondent merely recited isolated and disputed pieces of evidence that would support Father's position and ignored evidence that would support the jury's verdict—which is not the correct legal standard." We agree.

While the trial court provides a long list of evidentiary points, it does not in any way explain *how* that evidence undermines the jury's verdict. Nearly all the evidence cited in the new-trial order goes to the best interest finding; there is no connection or discussion of the evidence regarding either Subsections D or E (the endangerment grounds). As the parties seeking termination, Aunt and Uncle bore the burden to prove, by clear and convincing evidence, one of the predicate grounds under § 161.001(b)(1) of the Texas Family Code—here, either Subsection D or E—and that termination is in the Child's best interest. *See Int. of R.J.G.*, 681 S.W.3d at 377 (requiring that the Department must "establish by clear and convincing evidence at least one of the predicate findings . . . . And regardless of which predicate it asserts to justify termination, the Department must also prove by clear and convincing evidence that termination is in the child's best interest").

Subsection D requires a finding, by clear and convincing evidence, that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Subsection E requires a finding, by clear and convincing evidence, that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E). The new-trial order does not connect the cited evidence or explain how the evidence undermines the jury's findings of endangerment under either Subsections D or E. As for the stray remark in the new-trial order of Father's "past actions [being] remote in time other than

15

speculation as to relapse[,]" that was a matter for the factfinder, as the "factfinder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent." *Int. of M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). The trial court employed a method of listing evidence it relied on, without providing an explanation as to how that evidence undermines the jury's endangerment findings. In other words, the new-trial order does not actually discuss the evidence in relation to whether Father knowingly placed or knowingly allowed the Child to remain in conditions or surroundings which endangered his physical or emotional well-being (Subsection D), or whether Father engaged in conduct or knowingly placed the Child with persons who engaged in conduct which endangered the physical or emotional well-being of the Child (Subsection E). Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E).

"To be facially valid, a new-trial order based on a factual-sufficiency review must indicate that the trial judge considered the specific facts and circumstances of the case at hand and explain how the evidence (or lack of evidence) undermines the jury's findings." *In re Bent*, 487 S.W.3d at 176 (cleaned up). Yet here, the trial court merely substituted its own judgment for the jury's. And although a "trial court need not provide a detailed catalog of the evidence[,]" its rationale must nevertheless "ensure that, however subject to differences of opinion its reasoning may be, it was not a mere substitution of the trial court's judgment for the jury's." *United Scaffolding*, 377 S.W.3d at 688–89. The trial court's duty was to "explain how the evidence (or lack of evidence) undermines the jury's findings." *Id*. The trial court failed to do so. Instead, it tangentially lists evidence in support of Father's position, without addressing how that evidence undermines the jury's findings. Significantly, the trial court also ignored evidence proffered by Aunt and Uncle to support the jury's findings of endangerment. For example, the jury heard evidence of Father's past

16

criminal conduct and drug use during the Department's investigation, including that the Child tested positive for methamphetamines in connection with a report made about Father's unsupervised visitation with the Child, and that drug paraphernalia was found in Father's apartment during that investigation. Father also testified that since his release from prison in 2018, he had not undergone a psychological assessment for his addictions and had not completed any rehabilitation or substance abuse programs outside of prison. Other evidence included Father's enrollment in a drug court program on May 29, 2018. He tested positive for methamphetamines and cocaine at intake and was ultimately discharged from the program due to noncompliance. The jury also heard Mother's testimony that Father tackled her from behind when she was five months pregnant and shoved her on another occasion after the Child was born.[2]

In sum, the trial court's stated bases with respect to the sufficiency of the evidence "does not amount to a cogent and reasonably specific explanation of the reasoning that led the court to conclude that a new trial was warranted." *In re Bent*, 487 S.W.3d at 173 (citing *United Scaffolding*, 377 S.W.3d at 688) (cleaned up). And it does not "provide the parties any assurance that the jury's decision was set aside only after careful thought and for valid reasons." *Id.* (cleaned up). Because the trial court's stated bases do not meet *Columbia* and *United Scaffolding's* facial requirements, the order is not facially valid as required by the Texas Supreme Court. The trial court therefore abused its discretion in granting a new trial based on its articulated ground of insufficient evidence to support the jury's endangerment and best interest findings.

Aunt and Uncle's first issue is sustained.

---

[2] To be clear, our review of the trial court's rationale of insufficient evidence is a facial review only, but this highlights how the trial court substituted the factfinder's findings with its own. *See In re United Scaffolding*, 377 S.W.3d at 688 (establishing that a trial court's stated reason cannot be "to substitute the trial court's judgment for that of the jury"); *In re Bent*, 487 S.W.3d at 176 (explaining that a new-trial order amounts to an abuse of discretion when "the articulated reasons plainly state that the trial court merely substituted its own judgment for the jury's").

17

**B. Misconduct**

In their second issue, Aunt and Uncle argue the trial court abused its discretion in granting a new trial based on new evidence of misconduct by the jury and the bailiff, asserting that Father presented no admissible evidence to support a new trial on these grounds. Father responds by stating only that "the affidavits show evidence that the jurors had outside influence and discussed personal matters and opinions not in evidence. The trial court admitted the affidavits" and that "[e]ven if the affidavits are considered inadmissible, there is no harm because this Court has other grounds to affirm the trial court's ruling."

**(1) Applicable law and standard of review**

To warrant a new trial on grounds of misconduct, the complaining party has the burden to prove: (1) there was misconduct; (2) it was material; and (3) it probably caused injury. *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 372 (Tex. 2000). The complaining party bears the burden to prove all three elements before a new trial can be granted. *In re Health Care Unlimited, Inc.*, 429 S.W.3d 600, 602 (Tex. 2014) (orig. proceeding). Misconduct must be proved only through evidence of overt acts of misconduct. *Fountain v. Ferguson*, 441 S.W.2d 506, 507 (Tex. 1969). "All conversation is an overt act, but not everything said in the jury room is a proper subject of inquiry." *Cortez v. Med. Prot. Co. of Ft. Wayne, Ind.*, 560 S.W.2d 132, 137 (Tex. App.—Corpus Christi 1977, writ ref'd) (citing *Trousdale v. Texas & New Orleans Railroad Co.*, 276 S.W.2d 242, 243 (Tex. 1955)).

Rule 327 of the Texas Rules of Civil Procedure provides, in relevant part:

a. When the ground of a motion for new trial, supported by affidavit, is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury . . . the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the communication made . . . be material, and if it reasonably

18

appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

b. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Tex. R. Civ. P. 327. Similarly, Texas Rule of Evidence 606(b) provides, in relevant part:

(1) Prohibited Testimony or Other Evidence. During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) Exceptions. A juror may testify:

(A) about whether an outside influence was improperly brought to bear on any juror; or

(B) to rebut a claim that the juror was not qualified to serve.[3]

Tex. R. Evid. 606(b). Both the Texas Rules of Civil Procedure and the Texas Rules of Evidence prohibit jurors from testifying about deliberations or internal mental processes, except when outside influence is shown. *See* Tex. R. Civ. P. 327(b); Tex. R. Evid. 606(b). All testimony, affidavits, and other evidence is excluded from consideration by the court when an issue regarding jury misconduct is alleged, unless it is shown that an "outside influence was improperly brought to bear upon any juror." *Soliz v. Saenz*, 779 S.W.2d 929, 931 (Tex. App.—Corpus Christi 1989, writ denied). Texas courts agree that an outside influence "must emanate from outside the jury and

---

[3] The grounds articulated in Father's motion for new trial and the trial court's order do not allege that any juror was not qualified to serve.

19

its deliberations." *Blackmon v. Mixson*, 755 S.W.2d 179, 183 (Tex. App.—Dallas 1988, no pet.). "Whether misconduct did in fact occur is a fact question and whether injury probably resulted is a question of law." *Roming v. McDonald*, 514 S.W.2d 129, 130 (Tex. App.—El Paso 1974, writ ref'd). We will not disturb the trial court's decision to grant or deny a new trial based on juror misconduct, absent an abuse of discretion. *Int. of D.G.*, No. 06-15-00025-CV, 2015 WL 6520251, at *9 (Tex. App.—Texarkana Oct. 28, 2015, pet. denied) (mem. op.).

### (2) Analysis

We begin by reviewing the new-trial order to determine whether it is facially valid under *Columbia* and *United Scaffolding*. As part of the two-step process, we first consider whether the new-trial order provides a clear basis as to why the jury verdict was set aside. *In re Columbia*, 290 S.W.3d at 213; *In re United Scaffolding*, 377 S.W.3d at 688–89. Again, to be facially valid, the articulated rationale must be (1) "a reason for which a new trial is legally appropriate . . .;" and (2) "specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand." *In re United Scaffolding*, 377 S.W.3d at 688–89. With respect to the newly discovered evidence of alleged misconduct, the trial court articulated the following rationale:

> There was newly discovered evidence and (1) the evidence came to the movant's knowledge since the trial; (2) it was not because of a lack of due diligence that the movant did not learn of the evidence sooner; (3) the evidence is not cumulative; and (4) the evidence is so material that it probably would produce a different result if a new trial were granted. AND there was material act of inappropriate conduct or misconduct by the jury that caused probable injury to Movant.

> The conduct outlined in the affidavits indicate conduct that conflicts with the Court's instructions on how jurors should perform their duties. The Jury considered evidence outside the record in violation of TRCP 226 to include but not limited to specialized knowledge and sharing of personal knowledge and experience in violation of their oath. Statements of fact and opinion were made by the jurors.

20

Personal experiences in similar scenarios are statements of facts. That nature and conduct had material impact on at least three of the jurors.

There was a material misunderstanding of the law by the jurors and burden of proof. Their affidavits indicate a shift of the burden of proof onto Mr. Perez.

The jurors felt pressured by the bailiff to come to a decision. At one juncture they said they were ready to render verdict, then one juror became very upset, and the jury requested that he have a break to get a breath. The bailiff erroneously denied their request to break and did not inform the Court until AFTER the verdict.

The Jury submitted several questions during the deliberations. One question clearly indicated that they required additional information. Caselaw does indicate that the time during deliberations where the misconduct occurs is relevant. The note to the Court indicated that the misconduct occurred during a crucial time of deliberations. There was evidence of changes in votes of the jury during deliberations as mirrored the signing of the jury charge which controverted the number of juries who agreed with the verdict when polled. There was a conflict in jury's answers and jury poll not evident until after the filing of the jury charge. The jury charge and jury poll do not conform. The jury reached a verdict after 5:00 p.m. and the attorneys were not given a copy of the jury charge after the verdict during the jury poll. In addition, the poll fails to show whether the same jurors agreed on their answers to each question. The Court failed to notice the discrepancy between the jury poll and jury charge. The proper action at that time would have been to require the jury to retire for further deliberations or rebuke pursuant to TRCP 294[.]

The Court notes that the ability of both parties to obtain unadulterated affidavits from the juries was tainted by the witness tampering, obstruction and misrepresentation of the legal issues and proceedings by individuals representing themselves falsely as investigators by third parties. This intrusion into the legal process not only erodes the level of trust the public has in the judicial system but impedes the administration of justice.

In sum, the trial court identified six grounds that it deemed to constitute misconduct, which we briefly categorize below:

- Improper consideration of specialized knowledge and personal experiences by jurors during deliberations;
- Confusion regarding the jury charge;
- A discrepancy between the jury charge and the jury poll;
- Juror pressure, including alleged pressure by both the bailiff and fellow jurors to reach a verdict;
- Denial by the bailiff of a requested break during deliberations;

- Allegations of post-trial witness tampering.

The jurors' consideration of specialized knowledge and personal experiences, their confusion regarding the jury charge, and the discrepancy between the jury charge and the jury poll do not, in and of themselves, constitute grounds for which a new trial is legally appropriate and are therefore facially invalid bases to support the grant of a new trial.

As discussed above, the Texas Rules of Civil Procedure and the Texas Rules of Evidence expressly prohibit jurors from later testifying about matters or statements that occurred during jury deliberations. *See* Tex. R. Civ. P. 327(b); Tex. R. Evid. 606(b). Accordingly, allegations that jurors discussed specialized knowledge and personal experiences during deliberations does not rise to the level of outside influence, as we consider these mental processes and statements made during the course of deliberations. Such discussions are considered part of a juror's mental processes and internal reasoning—neither of which qualify as an "outside influence" and therefore cannot destroy a jury verdict. *See Soliz*, 779 S.W.2d at 932 ("Although this violates the trial court's instructions and we do not approve of this behavior, a juror's injection of his own personal experiences, knowledge or expertise is a matter which emanates from *inside* the jury and will not be considered an 'outside influence' upon the jury."); *Sproles Motor Freight Lines, Inc. v. Long*, 168 S.W.2d 642, 644 (Tex. 1943) ("[I]t is never permissible to allow a juror to preserve or destroy his verdict by testifying to mental processes by which he reached the same."); *see also Thompson v. Copeland*, 289 S.W.2d 312, 315 (Tex. App.—Austin 1956, writ ref'd n.r.e.) (finding the mental processes by which a juror reached a verdict may not be shown either to preserve or destroy such verdict.). The same is true of the trial court's finding that the jury misunderstood the law and burden of proof. More specifically, at the new-trial hearing, counsel for Father argued that "the jurors were confused by the jury charge." However, as the Supreme Court has made clear, "[i]t is

22

not misconduct to misinterpret or misunderstand the court's charge." *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 260 (Tex. 1974). Accordingly, juror discussions of their mental processes during deliberations and confusion regarding the jury charge cannot legally serve as a basis for granting a new trial under established Texas law.

Likewise, a discrepancy between the number of jurors who signed the charge and the number of jurors who orally confirmed their verdict when polled—so long as the requisite majority is maintained—does not in itself constitute a reason for which a new trial is legally appropriate. Ten jurors signed the charge, while 11 jurors orally confirmed the verdict as their individual decision when polled in open court. Rule 292(a) of the Texas Rules of Civil Procedure provides that a verdict may be rendered by the concurrence of at least ten members of an original jury of twelve. Tex. R. Civ. P. 292(a). This discrepancy, therefore, cannot invalidate the verdict or warrant a new trial. *See Branham v. Brown*, 925 S.W.2d 365, 368 (Tex. App.—Houston [1st Dist.] 1996, no pet.) ("Thus, after a verdict is returned and is officially received by the court and the jury is discharged, it is not permissible to thereafter establish jury misconduct and impeach the verdict by presenting evidence that the verdict was not unanimous or that a nonunanimous verdict was returned by different 'shifting' majorities.").

As to the remaining grounds of alleged misconduct, juror and bailiff misconduct and witness tampering may, in certain instances, constitute grounds that legally warrant a new trial. And we find the new-trial order to be facially valid on these grounds because it "describe[d] the evidence or circumstances it observed to reach its conclusion [that] misconduct occurred." *In re Thibodeaux*, No. 09-20-00008-CV, 2020 WL 1465985, at *3 (Tex. App.—Beaumont Mar. 26, 2020, orig. proceeding) (per curiam) (mem. op.) ("On the other hand, should the trial court grant the motion [for new trial] based on the plaintiffs' allegations of jury misconduct, the trial court

23

must describe the evidence or circumstances it observed to reach its conclusion jury misconduct occurred."). Having found that the articulated grounds of juror and bailiff misconduct, as well as witness tampering, satisfy the facial requirements, we now turn to a review of the merits to determine whether the trial court's rationale is supported by the record.

Regarding the alleged misconduct by the bailiff, the trial court's order granting a new trial stated:

> The jurors felt pressured by the bailiff to come to a decision. At one juncture they said they were ready to render verdict, then one juror became very upset, and the jury requested that he have a break to get a breath. The bailiff erroneously denied their request to break and did not inform the Court until AFTER the verdict.

At the new-trial hearing, the trial court admitted three juror affidavits into evidence. Of the three affidavits, only one addressed the bailiff's conduct, and the juror reflected two sources of pressure: "I felt pressured by the bailiff as he kept asking if we were ready with the verdict. I also felt I had to make a decision by 5:00 p.m. as most jurors were pressed for time and wanted to return to work."

However, a bailiff's statement to the jury does not constitute improper outside influence or misconduct where the communication is neutral and not the type of information that would influence the verdict, even if it may encourage the jury to reach an agreement. *See Rosell v. Central West Motor Stages, Inc.*, 89 S.W.3d 643 (Tex. App.—Dallas 2002, pet. denied) (finding that a statement to jurors that they probably would be required to deliberate another day if they did not come to a decision was not misconduct). A new trial based on misconduct will be granted only when the misconduct is proven, material, and probably resulted in harm to the complaining party. *Jackson*, 24 S.W.3d at 372. The record here fails to establish any of those elements.

24

Furthermore, although the trial court found that the bailiff improperly denied a juror's request to take a break, there is no evidence in the record to support that finding. None of the juror affidavits mention this conduct, nor was it raised or discussed at the new-trial hearing. No witness—including any juror or the bailiff—testified at the hearing. Father was required to show not only that this was misconduct, but that it was material and that it "reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." *Id*. Assuming the denial of a break constitutes misconduct, there is no evidence that such conduct occurred, was material, or that it probably caused harm to Father. *See id.* Accordingly, the trial court abused its discretion by granting a new trial on this basis.

The final ground identified by the trial court in its new-trial order was what it characterized as "witness tampering, obstruction and misrepresentation of the legal issues and proceedings by individuals representing themselves falsely as investigators by third parties," which the trial court found tainted the parties' ability to obtain unadulterated juror affidavits. In support, one juror affidavit stated that after trial, the juror was contacted by an individual named Samuel Carrejo. According to the affidavit, Carrejo left a voicemail identifying himself as an investigator and asking to speak about the case. The juror declared in his affidavit that he did not know Carrejo and did not speak to him. Accordingly, there was no evidence that this post-trial contact influenced the juror's verdict or altered the outcome of deliberations.

As the complaining party, Father bore the burden to prove the alleged misconduct (1) occurred; (2) was material; and (3) probably caused injury. *In re Thibodeaux*, 2020 WL 7756073, at *5 ("The complaining party bears the burden to prove all three elements before the trial court may grant a new trial."). "Whether misconduct occurred and caused injury are questions of fact

for the trial court." *Id.* An evidentiary hearing in this context is therefore required because "a trial judge ruling on a motion for new trial based on affidavits of juror misconduct alone cannot perform the critical function of assessing the credibility of the affiants, who are making serious charges about the manner in which their fellow jurors have discharged their duties." *In re Zimmer, Inc.*, 451 S.W.3d 893, 901 (Tex. App.—Dallas 2014, orig. proceeding). As such, "[w]hen the ground of a motion for new trial, supported by affidavit, is misconduct of the jury . . . the court shall hear evidence thereof from the jury or others in open court[.]" Tex. R. Civ. P. 327(a). Accordingly, when, as here, a party files a motion for new trial supported by affidavits but presents no live evidence at the hearing, that party fails to prove the alleged misconduct, and the trial court cannot grant a new trial based on that conduct. *See In re Thibodeaux*, 2020 WL 7756073, at *5; *In re Zimmer, Inc.*, 451 S.W.3d at 902 ("[A] trial court may properly deny a motion for new trial when a party alleging jury misconduct relies only on affidavits and fails to request a hearing on his motion and offer live testimony proving misconduct."); *see, e.g.*, *McNutt v. Qualls*, 433 S.W.2d 521, 524 (Tex. App.—Dallas 1968, no writ) (trial court did not err in denying motion for new trial where complaining party offered only affidavits). Because no evidence, apart from the affidavits, was presented at the hearing on the motion for new trial, we conclude the trial court abused its discretion in setting aside the jury's verdict on these grounds. *In re Zimmer, Inc.*, 451 S.W.3d at 902 ("We conclude the trial court abused its discretion in granting [a] new trial based only on affidavit evidence of juror misconduct.").

Aunt and Uncle's second issue is sustained.

## IV. Conclusion

We conditionally grant mandamus relief and direct the trial court to vacate its new-trial order, reinstate the verdict, and proceed in the normal course with the post-trial stages of litigation. We are confident the trial court will comply, and the writ will issue only if it does not.

MARIA SALAS MENDOZA, Chief Justice

September 15, 2025

Before Salas Mendoza, C.J., Palafox, J., and Rodriguez, C.J. (Ret.)
Rodriguez, C.J. (Ret.) (sitting by assignment)